FRANK WITT ET AL. *v.* ST. VINCENT'S MEDICAL
CENTER ET AL.
(AC 17709)

Foti, Landau and Hennessy, Js.

Argued December 14, 1998—officially released April 13, 1999

*Joel T. Faxon*, with whom, on the brief, were *Christopher D. Bernard* and *Joshua D. Koskoff*, for the appellants (plaintiffs).

*Garie J. Mulcahey*, with whom, on the brief, was *R. J. Weber III*, for the appellee (defendant David Lobdell).

*Opinion*

HENNESSY, J. The plaintiffs, Frank Witt and Rebecca Witt, appeal from the judgment rendered in favor of the defendant David Lobdell after the trial court granted Lobdell's motion for summary judgment. On appeal, the plaintiffs claim that the trial court improperly (1) failed to find that the statute of limitations, General Statutes § 52-584,[1] was tolled by Lobdell's continuous duty to

---

[1] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first

warn Frank Witt of a suspected, harmful medical condition, (2) failed to find that § 52-584 was tolled by a continuous course of conduct premised on Lobdell's failure to correct a reported diagnosis that he knew to be wrong, (3) failed to find that § 52-584 was tolled by a continuous course of conduct premised on an ongoing physician-patient relationship and (4) failed to find genuine issues of material fact related to issues one, two and three, which would have required denial of Lobdell's motion for summary judgment. We affirm the judgment of the trial court.

The following facts are relevant to the disposition of this appeal. In September, 1983, Frank Witt was sent by his family physician to a surgeon, Vincent Donnelly, to perform a biopsy on an enlarged cervical lymph node. Donnelly excised the node on September 26, 1983, and sent the node to Lobdell, a pathologist. Lobdell examined the tissue the following day and wrote a report in which he stated that his diagnosis was "atypical lymphoid hyperplasia" of the cervical lymph node. Frank Witt relied on this diagnosis and did not pursue any treatment for his persistent neck swelling.

Eleven years later, in November, 1994, Frank Witt discovered that he was suffering from non-Hodgkin's lymphoma. On October 19, 1994, Witt's treating oncologist, Barry Meisenberg, requested from Lobdell the original slides of the excised lymph node. Lobdell complied and sent the slides as well as a copy of the medical report. At the bottom of the report, Lobdell wrote a note to Meisenberg that stated: "I'd be interested in a follow up on this patient!! I think at the time we were concerned that Mr. Witt might be evolving a small lymphocytic lymphoma/CCL."

sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

Thereafter, the plaintiffs filed this four count medical malpractice suit on March 27, 1995, within two years of Frank Witt's learning that he had cancer and five months after learning of Lobdell's comment to Meisenberg on the medical report. Counts one and two of the complaint set forth claims on behalf of Frank Witt against St. Vincent's Medical Center and Lobdell, respectively. Count three sets forth claims on behalf of Rebecca Witt and Frank Joseph Witt, the Witts' seven year old son, for loss of consortium and loss of parental consortium, against St. Vincent's Medical Center. Count four sets forth these claims against Lobdell.

On September 25, 1996, Lobdell filed a motion for summary judgment on counts two and four of the complaint, alleging that those claims were barred by the applicable statute of limitations.[2] The plaintiffs filed a memorandum in opposition to the motion for summary judgment on May 2, 1997, arguing that the statute of limitations was tolled because of Lobdell's continuous duty to warn Frank Witt of his condition and because there was a genuine issue of material fact raised by Lobdell's admission by way of his sworn affidavit to the trial court. On September 29, 1997, the trial court, granted Lobdell's motion for summary judgment as to both counts.[3] This appeal followed.[4]

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material

---

[2] St. Vincent's Medical Center has not moved for summary judgment.

[3] The trial court later filed a written memorandum of decision on December 1, 1997. Thereafter, the plaintiffs filed a motion to reargue, which was denied.

[4] The claim for loss of parental consortium by the plaintiffs' son, Frank Joseph Witt, on which summary judgment was granted, has not been raised as an issue in this appeal.

fact and that the moving party is entitled to judgment as a matter of law. See *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 250, 654 A.2d 748 (1995). Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. *Haesche* v. *Kissner*, 229 Conn. 213, 217, 640 A.2d 89 (1994). It is not enough, however, for the opposing party merely to assert the existence of . . . a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment] . . . . *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 665, 646 A.2d 143 (1994). *Branford* v. *Monaco*, 48 Conn. App. 216, 221–22, 709 A.2d 582, cert. denied, 245 Conn. 903, 719 A.2d 900 (1998). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . *Beebe* v. *East Haddam*, 48 Conn. App. 60, 64, 708 A.2d 231 (1998)." (Internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 50 Conn. App. 385, 387, 717 A.2d 811 (1998). With these principles in mind, we look now to the plaintiffs' claims on appeal.

The plaintiffs claim on appeal that the trial court improperly failed to find that the statute of limitations, § 52-584, was tolled by Lobdell's continuous duty to warn Frank Witt of a suspected, evolving lymphoma and a continuous course of conduct premised on Lobdell's failure to report a corrected diagnosis and an ongoing physician-patient relationship. The plaintiffs further claim that the trial court improperly failed to find genuine issues of material fact and granted Lobdell's motion for summary judgment. We disagree.

"In the medical malpractice context, [our Supreme Court has] specifically determined that a lawsuit commenced more than three years from the date of the negligent act or omission complained of is barred by the statute of limitations, § 52-584, regardless of whether the [party bringing the action] had not or, in the exercise of care, could not reasonably have discovered the nature of the injuries within that time period. . . . [Our Supreme Court has] also recognized, however, that the statute of limitations, in the proper circumstances, may be tolled under . . . the continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date." (Citations omitted.) *Blanchette* v. *Barrett*, 229 Conn. 256, 265, 640 A.2d 74 (1994).

The continuing course of conduct doctrine is well established in the jurisprudence of this state. "The continuous course of conduct doctrine requires that three requirements be met: (1) an ongoing physician-patient relationship; (2) negligence by the defendant; and (3) some form of conduct that continued beyond the initial treatment. [Id., 278.] These requirements are 'conspicuously fact-bound.' Id., 276. 'The determination of whether the physician-patient relationship has terminated depends upon several factors. These factors include the subjective views of the parties as to whether their relationship had terminated; the length of their relationship; the frequency of their interactions; the nature of the physician's practice; whether the physician had prescribed a course of treatment for or was monitoring the condition of the patient; whether the patient was relying upon the opinion and advice of the physician with regard to a particular injury, illness or medical condition; and whether the patient had begun to consult with another physician concerning the same injury, illness or medical condition.' . . . Id., 278."

*Starkweather* v. *Patel,* 34 Conn. App. 395, 401–402, 641 A.2d 809, cert. denied, 230 Conn. 905, 644 A.2d 918 (1994).

Here, Lobdell maintains that there is no basis to toll the statute of limitations because there was no long-standing relationship between the parties. The plaintiffs' complaint alleges that Frank Witt's injuries arose out of Lobdell's alleged misdiagnosis and reporting of a pathology specimen on September 26, 1983. This one time occurrence was the sole medical service Lobdell provided to Frank Witt. Indeed, there is no claim that Lobdell had ever met Frank Witt, provided medical treatment or even had any contact with him subsequent to the examination of the lymph node specimen and his report to Witt's physician. Furthermore, Lobdell filed a sworn affidavit with the trial court that stated that the September 26, 1983 pathology report was the only medical service he ever provided to Frank Witt. The plaintiffs do not controvert this material fact, nor do they claim that they had any subjective view that there was any ongoing relationship between Frank Witt and Lobdell. Because of these facts, we find that there was no continuous course of conduct based on an ongoing physician-patient relationship that could toll the statute of limitations.

Furthermore, we agree with Lobdell that the plaintiffs' reliance on *Connell* v. *Colwell,* 214 Conn. 242, 571 A.2d 116 (1990), is misplaced. In *Connell,* our Supreme Court applied the continuing course of conduct doctrine, stating: " 'To support a finding of a "continuing course of conduct" that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong.' *Fichera* v.

*Mine Hill Corporation,* [207 Conn. 204, 209, 541 A.2d 472 (1988)]. In such situations, however, the continuing course of conduct is not the failure of the alleged tortfeasor to notify the plaintiff of his wrongdoing. As [our Supreme Court] stated in *Fichera* v. *Mine Hill Corporation,* supra, 210, it consists, rather, of *'either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.'* " (Emphasis added.) *Connell* v. *Colwell,* supra, 254–55. Here, there was no later wrongful conduct by Lobdell since he provided only a single medical service to Frank Witt. There was, furthermore, no special relationship between the parties that would give rise to a continuing duty. Lobdell did not engage in any conduct or initiate any other contact with Frank Witt after September, 1983, and had no fiduciary or contractual relationship with Frank Witt. The plaintiffs have not alleged any such facts, and the absence of such facts leads us to the conclusion that no special relationship existed that could give rise to a continuous duty, which would, in turn, toll the statute of limitations.

In addition, while the plaintiffs correctly state that the trial court improperly held that "there is no continuing duty to warn under Connecticut law," there was, nonetheless, no duty to warn or correct an alleged misdiagnosis in the case. For support of their claim, the plaintiffs cite *Cross* v. *Huttenlocher,* 185 Conn. 390, 440 A.2d 952 (1981). Their reliance is misplaced, however, because while our Supreme Court did recognize that "the negligent failure to warn is a continuing course of conduct"; id., 400, citing *Prokolkin* v. *General Motors Corp.,* 170 Conn. 289, 298, 365 A.2d 1180 (1976); *Handler* v. *Remington Arms Co.,* 144 Conn. 316, 321, 130 A.2d 793 (1957); in *Cross,* there was a long-standing relationship between the plaintiff and the defendant physician.

In contrast, here, there was only a single occurrence. Therefore, there existed no duty to warn or correct a reported diagnosis.[5]

The only other material fact relevant to this discussion is the date the plaintiffs filed this lawsuit. It is clear that the plaintiffs did not file this lawsuit until March 27, 1995, more than eleven years after the alleged negligent act, and, therefore, this action was filed well past the expiration of the statute of limitations pursuant to § 52-584. Since there was only a single medical service provided by Lobdell to Frank Witt in September, 1983, and there was no breach of a duty that remained in existence subsequent to September, 1983, the continuing course of conduct doctrine cannot be applied to toll the statute. Furthermore, because there exists no issue of material fact as to the date on which the complaint was filed and whether the relationship between Frank Witt and Lobdell was a physician-patient relationship and whether such relationship was ongoing, the trial court properly granted summary judgment.

On the basis of the foregoing, we conclude that the trial court properly granted Lobdell's motion for summary judgment because there was no genuine issue of material fact for a jury to consider and the claim was filed well beyond the applicable statute of limitations.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] This claim also fails because, while the plaintiffs brief the failure to warn issue, they fail to mention any claimed failure to warn in their complaint. The plaintiffs also cite *Handler* v. *Remington Arms Co.*, supra, 144 Conn. 316, to support their argument that a physician has a continuous duty to warn his patient of a dangerous condition of which he is aware. *Handler* is readily distinguishable from this case because *Handler* was not a medical malpractice case but, rather, a products liability action.