FRANK WITT ET AL. *v.* ST. VINCENT'S MEDICAL CENTER ET AL.
(SC 16115)

Borden, Norcott, Katz, Sullivan and Vertefeuille, Js.

Argued January 21—officially released March 14, 2000

---

*Joel T. Faxon*, with whom were *Christopher D. Bernard* and, on the brief, *Joshua D. Koskoff*, for the appellants (plaintiffs).

*Gaileen F. Kaufman*, with whom, on the brief, were *Garie T. Mulcahey* and *R. J. Weber III*, for the appellee (defendant David Lobdell).

*Opinion*

KATZ, J. In this certified appeal, the plaintiff claims[1] that the trial court improperly concluded, in granting the motion for summary judgment filed by the defendant David Lobdell (defendant),[2] that his action was barred by the three year statute of repose contained in General Statutes § 52-584.[3] We conclude that there is a genuine issue of material fact as to whether the statute of repose contained in § 52-584 was tolled by the contin-

---

[1] The plaintiffs in this case are Frank Witt, his wife, Rebecca Witt, and their minor child, Frank Joseph Witt. In the interest of clarity, we refer to them singularly as the plaintiff.

[2] The named defendant in this case, St. Vincent's Medical Center, is not involved in this appeal. References herein to the defendant are to Lobdell only.

[3] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, *and except that no such action may be brought more than three years from the date of the act or omission complained of . . . .*" (Emphasis added.)

uing course of conduct doctrine because of the defendant's alleged ongoing failure to report to the plaintiff the totality of his diagnosis. Accordingly, we reverse the judgment of the Appellate Court affirming the trial court's summary judgment rendered in favor of the defendant.

The opinion of the Appellate Court sets forth the following pertinent facts. "In September, 1983, [the plaintiff] was sent by his family physician to a surgeon, Vincent Donnelly, to perform a biopsy on an enlarged cervical lymph node. Donnelly excised the node on September 26, 1983, and sent the node to [the defendant], a pathologist. [The defendant] examined the tissue the following day and wrote a report in which he stated that his diagnosis was 'atypical lymphoid hyperplasia' of the cervical lymph node. [The plaintiff] relied on this diagnosis and did not pursue any treatment for his persistent neck swelling.

"Eleven years later, in November, 1994, [the plaintiff] discovered that he was suffering from non-Hodgkin's lymphoma. On October 19, 1994, [his] treating oncologist, Barry Meisenberg, requested from [the defendant] the original slides of the excised lymph node. [The defendant] complied and sent the slides as well as a copy of the medical report. At the bottom of the report, [the defendant] wrote a note to Meisenberg that stated: 'I'd be interested in a follow up on this patient!! I think at the time we were concerned that [the plaintiff] might be evolving a small lymphocytic lymphoma/CCL.'

"Thereafter, the [plaintiff] filed this four count medical malpractice suit on March 27, 1995, within two years of [his] learning that he had cancer and five months after learning of [the defendant's] comment to Meisenberg on the medical report. Counts one and two of the complaint set forth claims on behalf of [the plaintiff] against St. Vincent's Medical Center and [the defendant], respec-

tively. Count three sets forth claims on behalf of [the plaintiff's wife and son], for loss of consortium and loss of parental consortium, against St. Vincent's Medical Center. Count four sets forth these claims against [the defendant].

"On September 25, 1996, [the defendant] filed a motion for summary judgment on counts two and four of the complaint, alleging that those claims were barred by the applicable statute of limitations. The [plaintiff] filed a memorandum in opposition to the motion for summary judgment on May 2, 1997, arguing that the statute of limitations was tolled because of [the defendant's] continuous duty to warn [the plaintiff] of his condition and because there was a genuine issue of material fact raised by [the defendant's] admission by way of his sworn affidavit to the trial court. On September 29, 1997, the trial court, granted [the defendant's] motion for summary judgment as to both counts."[4] *Witt* v. *St. Vincent's Medical Center*, 52 Conn. App. 699, 701–702, 727 A.2d 802 (1999).

Following the decision by the Appellate Court, which affirmed the judgment of the trial court and concluded that there was no issue of material fact regarding the continuous course of conduct doctrine that could serve to toll the statute of limitations; id., 705; the plaintiff petitioned this court for certification. We granted the petition limited to the following issue. "Did the Appellate Court properly conclude that the defendant pathologist had no continuing duty to report his actual medical findings and diagnosis concerning the plaintiff's suspected medical conditions?" *Witt* v. *St. Vincent's Medical Center*, 249 Conn. 910, 733 A.2d 228 (1999).

The plaintiff claims that in granting the defendant's motion for summary judgment, the trial court improp-

[4] The claim for loss of parental consortium on behalf of the plaintiff's son, on which summary judgment was rendered, was not raised as an issue in the appeal.

erly concluded that the three year statute of repose contained in § 52-584 barred his negligence claim. That statute provides in relevant part that "[n]o action . . . caused by negligence . . . or by malpractice of a physician . . . *may be brought more than three years from the date of the act or omission complained of* . . . ." (Emphasis added.) See footnote 3 of this opinion. The plaintiff claims, however, that although the defendant was aware of the possibility of cancer, he failed to disclose that concern to the plaintiff. That failure was tantamount to a failure of his ongoing duty to warn, a duty that triggered the continuing course of conduct doctrine. Therefore, the plaintiff claims that the continuing course of conduct doctrine tolled the commencement of the running of the three year statute of repose contained in § 52-584 until October, 1994, when the defendant advised the plaintiff of his concern of cancer in a note to the plaintiff's then current physician. The plaintiff further claims that, because he brought this action against the defendant on March 27, 1995, it was timely commenced and the defendant's motion for summary judgment should have been denied.

The defendant claims that the three year period of the statute of repose began to run on September 29, 1983, when he examined a specimen of the plaintiff's enlarged cervical lymph node that had been removed by Donnelly. Although the defendant recognizes that, under some circumstances, the continuing course of conduct doctrine serves to toll a statute of limitations, he denies the applicability of that doctrine in this case.

We conclude that, based upon the materials presented to the trial court, there is a sufficient question of fact regarding the applicability of the continuing course of conduct doctrine so as to preclude summary judgment for the defendant. Accordingly, we reverse the judgment.

I

We begin with the appropriate standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381 [now § 17-46]. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994)." (Internal quotation marks omitted.) *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 380–81, 713 A.2d 820 (1998). In the present case, an affidavit, attesting to the fact that the 1983 pathology report was the only medical service the defendant had ever provided to the plaintiff, was offered by the defendant in support of his motion. As an exhibit accompanying his objection to the defendant's motion, the plaintiff submitted the note from the defendant, dated October, 1994, reflecting his concern in 1983 that the plaintiff might be developing lymphoma. In deciding whether the trial court properly concluded that § 52-584 bars this action, therefore, we are confined solely to the

complaint, the defendant's affidavit, his note to the plaintiff's treating physician and to the statute under consideration.

## II

It is well established that "the relevant date of the act or omission complained of, as that phrase is used in § 52-584, is the date when the negligent conduct of the defendant occurs and . . . not the date when the plaintiff first sustains damage." (Internal quotation marks omitted.) *Blanchette* v. *Barrett*, 229 Conn. 256, 265, 640 A.2d 74 (1994). Therefore, an action commenced more than three years from the date of the negligent act or omission complained of is barred by the statute of limitations contained in § 52-584, regardless of whether the plaintiff had not, or in the exercise of care, could not reasonably have discovered the nature of the injuries within that time period. *Stein* v. *Katz*, 213 Conn. 282, 285, 567 A.2d 1183 (1989).

As we recently reiterated in *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 202–203, 746 A.2d 730 (2000), a statute of limitations or repose[5] "may be tolled under the . . . continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date. . . . [T]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period

[5] "Although this court occasionally has referred to the statutory language in § 52-584 that 'no such action may be brought more than three years from the date of the act or omission complained of' as part of the 'statute of limitations' contained in § 52-584; see, e.g., *Blanchette* v. *Barrett*, supra, 229 Conn. 274; this restrictive language in § 52-584 has been referred to more precisely as the 'repose section of the statute of limitations.' Id., 258; see also id., 258 n.1. Likewise in this case, the repose section of § 52-584 is at issue." *Sherwood* v. *Danbury Hospital*, supra, 252 Conn. 202–203 n.9.

allowed for bringing an action for such a wrong. . . .
Where we have upheld a finding that a duty continued
to exist after the cessation of the act or omission relied
upon, there has been evidence of either a special rela-
tionship between the parties giving rise to such a contin-
uing duty or some later wrongful conduct of a defendant
related to the prior act." (Citations omitted; internal
quotation marks omitted.)

### III

In deciding whether the trial court properly granted
the defendant's motion for summary judgment, we must
determine if there is a genuine issue of material fact
with respect to whether the defendant: (1) committed
an initial wrong upon the plaintiff; (2) owed a continuing
duty to the plaintiff that was related to the alleged
original wrong; and (3) continually breached that duty.

We first consider whether there is a genuine issue
of material fact with regard to whether the defendant
committed an initial wrong upon the plaintiff. The plain-
tiff alleged in his complaint, inter alia, that the defendant
had failed to: (1) properly diagnose, monitor and super-
vise the plaintiff's medical condition; (2) make an accu-
rate and correct pathology diagnosis; (3) diagnose non-
Hodgkin's lymphoma; (4) consult with other patholo-
gists regarding the diagnosis; and (5) discuss the diagno-
sis and pathology findings with the referring surgeon.
The defendant answered the complaint, denying these
allegations and offered no other evidence regarding the
alleged initial malpractice in connection with his motion
for summary judgment. Accordingly, in the absence of
any evidentiary foundation to eliminate the existence
of the alleged original malpractice, there was a genuine
issue of material fact with regard to whether the defen-
dant had committed an initial wrong upon the plaintiff.

We next consider whether there was a genuine issue
of material fact with regard to whether the defendant

owed the plaintiff "a duty that remained in existence after commission of the original wrong related thereto." (Internal quotation marks omitted.) *Blanchette* v. *Barrett,* supra, 229 Conn. 275. The plaintiff acknowledges that, in the absence of a continuing special relationship, there must be a subsequent wrongful act that is related to the prior negligence. In determining whether the continuing course of conduct doctrine applies to toll the repose section of the statute of limitations contained in § 52-584, we have thrice held, in the medical treatment context, that continuing "wrongful conduct may include acts of omission as well as affirmative acts of misconduct . . . ." Id., 264; see *Sherwood* v. *Danbury Hospital,* supra, 252 Conn. 205, and the cases cited therein.[6]

In this case, the plaintiff claims that the subsequent wrongful conduct is an omission—the defendant's continuing failure to report to the plaintiff his actual findings and diagnosis. According to the plaintiff, the defendant's note of October, 1994, reflecting a concern about evolving cancer, read together with the report from 1983, at best, renders it impossible to know what the defendant's actual findings were, and at worst, demonstrates that the initial report was dangerously incomplete. The plaintiff argues that, if the two are read together, a jury could find that, although the defendant had some concerns in September, 1983, they were not

[6] See *Sherwood* v. *Danbury Hospital,* supra, 252 Conn. 208–209 (hospital's failure to notify patient of untested nature of blood she had received during transfusion while at hospital was continuing course of conduct tolling statute of limitations); *Blanchette* v. *Barrett,* supra, 229 Conn. 264 (doctor's failure to monitor patient subsequent to initial diagnosis was continuing course of conduct that tolled statute of limitations); *Cross* v. *Huttenlocher,* 185 Conn. 390, 400, 440 A.2d 952 (1981) ("[b]ecause the negligent failure to warn is a continuing course of conduct, the statute of limitations does not begin to run until the course of conduct is completed"); cf. *Handler* v. *Remington Arms Co.,* 144 Conn. 316, 321, 130 A.2d 793 (1957) (failure of manufacturer to perform its continuing duty to warn of defective gun cartridge sold to public tolls statute of limitations).

expressed in the report, and that, therefore, a complete diagnosis had not been conveyed to him or the referring surgeon. We read this record as one in which the plaintiff claims that the defendant's malpractice consisted of both an improper diagnosis *and* an incomplete diagnosis in September, 1983.

The plaintiff's complaint alleges that, although the defendant was aware of the risk of cancer developing, he "failed to discuss the diagnosis and pathology findings with the referring surgeon . . . ." Assuming the truth of this allegation, which we do for purposes of a summary judgment motion, a jury could reasonably conclude that, had such a discussion taken place, the defendant would have related his concern about cancer. It is this concern of cancer that, if it existed at the time of his initial diagnosis, gave rise to the defendant's continuing duty to warn, which in turn triggered the continuing course of conduct doctrine. We conclude that these allegations in the complaint, read together with the note from the defendant, were sufficient to raise a genuine issue of material fact as to whether the defendant had a continuing duty to report completely his findings from 1983—a continuing duty related to the original wrong.[7]

---

[7] It is true that in all three of the cases in which this court has held that there was sufficient evidence for a jury to have concluded that a defendant health care provider had a duty to take some affirmative conduct subsequent to an initial medical procedure, the plaintiff presented expert testimony. See *Sherwood* v. *Danbury Hospital*, supra, 252 Conn. 207 (plaintiff presented expert witness who stated that " 'good medical practice' " required defendant to have taken steps, in form of notifying plaintiff of untested nature of blood she had received, subsequent to transfusion); *Blanchette* v. *Barrett*, supra, 229 Conn. 279 ("[t]he testimony of the plaintiff's expert witness . . . which the jury might have found credible, was sufficient to find not only . . . a continuing duty on the part of the defendant . . . but also continuing negligence on the part of the defendant based upon a breach of his professional duty of care to the plaintiff"); *Cross* v. *Huttenlocher*, 185 Conn. 390, 402, 440 A.2d 952 (1981) (plaintiff presented expert testimony that, "if credited by the jury, could have been sufficient to make out a case of negligent failure to warn").

In this case, the plaintiff did not offer an affidavit from an expert that

Finally, we consider whether there was a genuine issue of material fact with regard to whether there was a continuing breach of that duty, that is, whether there was subsequent wrongful conduct. Here that conduct was the defendant's alleged continuing failure to indicate his concern for cancer throughout the period of time following the initial findings. A fact finder could find evidence that the defendant had a concern about cancer in 1983 from the note written by the defendant in 1994, which accompanied the medical slide he sent in response to a request from the plaintiff's then treating physician. The duty to make the report commenced when the information became available, which a jury could find was in 1983, and that the duty continued until disclosure resulting in a complete diagnosis was

the defendant, in order to meet the applicable standard of care, would have been required, as part of his 1983 diagnosis, to express the concern regarding cancer that he referred to in his 1994 statement. We do not, however, deem that failure to be fatal. Whether there was an initial wrong and whether there existed a duty that remained in existence after the commission of the original wrong related thereto were issues on which the defendant, as the summary judgment movant, bore the burden of proof. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . Because the supporting affidavits of the defendant . . . fail to show that there are no genuine issues of fact, the factual issues alleged and contested in the pleadings remain unresolved. The court, therefore, erred in granting summary judgment." (Citations omitted; internal quotation marks omitted.) *D.H.R. Construction Co.* v. *Donnelly,* supra, 180 Conn. 434. Similarly, in this case, the defendant's affidavit does not defeat conclusively the plaintiff's claims that the defendant had an ongoing duty to convey his complete diagnosis. We assume that, at trial, the plaintiff will be able to establish that, in 1983, the defendant breached the applicable standard of care by not expressing *then* in his diagnosis the concerns that he later expressed in 1994.

made, that is, until such time as the findings were reported in their entirety. In this case, the plaintiff alleged that the defendant failed to report his actual medical findings to him and that this concern of cancer was not expressed until October, 1994. This continuous failure to notify is similar to the continuous failure to warn that we found actionable in *Sherwood* v. *Danbury Hospital*, supra, 252 Conn. 209; to the continuous failure to monitor we found actionable in *Blanchette* v. *Barrett*, supra, 229 Conn. 280; and to the continuous failure to warn we found actionable in *Cross* v. *Huttenlocher*, supra, 185 Conn. 400–401. Therefore, we conclude that the allegations of the defendant's continuous failure to report, combined with the note evidencing knowledge of the defendant's concern for the possibility of cancer, were sufficient to create a genuine issue of material fact with regard to whether the defendant was in continual breach of his ongoing duty to the plaintiff.

The defendant has argued that this case falls within the determination in *Blanchette* that a physician who has made a misdiagnosis has no continuing duty to correct that diagnosis in the absence of proof that he subsequently learned that his diagnosis had been incorrect. *Blanchette* v. *Barrett*, supra, 229 Conn. 284. The defendant argues that, unlike in *Blanchette*, there was no reason to assume that he would discover any earlier mistake.[8]

---

[8] The defendant tries to distinguish *Blanchette* based upon the fact that the physician in that case was a treating physician, who, therefore, had many opportunities to make the subsequent discovery. That distinction is in no way dispositive. As we recently explained in *Sherwood* v. *Danbury Hospital*, supra, 252 Conn. 210, "we do not read *Blanchette* to require an ongoing physician-patient relationship *in all instances* in the medical context in which the continuing course of conduct doctrine may apply." (Emphasis in original.) In this case, as in *Sherwood*, the defendant's affirmative duty to notify the plaintiff was not conditioned upon the plaintiff maintaining an ongoing relationship with the defendant.

The plaintiff is not, however, simply asserting a misdiagnosis claim. The plaintiff argues that the 1994 notation does not show that he *subsequently* learned of his earlier misdiagnosis, but, rather, it shows that *at the time of the diagnosis in 1983* the defendant had some level of knowledge that should have been disclosed to the forwarding physician. In other words, the plaintiff's argument is that the notation would permit a fact finder to find some degree of knowledge on the defendant's part that there was more to be concerned about in 1983, and that, based on expert testimony that he will proffer at trial regarding the applicable standard of care, the defendant was required in 1983 to express his misgivings as part of his diagnosis. The defendant acknowledges that, had he stated in the 1994 note that he wanted to know what happened to the plaintiff because, despite what he had written in 1983, at the time of that examination, *he believed* that the plaintiff *was developing* cancer, there would have been enough evidence upon which a jury could conclude, both that he had been negligent for preparing an incomplete report in 1983, and that he had known more at the time of diagnosis than he actually had conveyed. The duty to correct a diagnosis that a physician subsequently learns was incorrect, as alleged in *Blanchette*, and the duty to correct a diagnosis that he had reason to question in the first instance, as alleged in this case, both implicate the continuing course of conduct doctrine. What level of certainty is required to trigger these duties is necessarily a matter of expert testimony, which the plaintiff will have the opportunity to present at trial. That is, whether the defendant actually knew or suspected something in 1983 that he had failed to report and that he was required by the standard of care to express that knowledge or suspicion are facts that the plaintiff will have to

prove to the jury at trial to establish that the continuing course of conduct doctrine applies.[9]

Therefore, we conclude that, because the plaintiff presented evidence, specifically the note from the defendant to the plaintiff's treating physician, from which a jury could infer that the defendant knew in 1983 that there was a concern about evolving cancer that he failed to relate, this case sufficiently resembles the case of a physician who, upon subsequently learning that his initial diagnosis was incorrect, has a continuing duty to disclose that has been triggered by the subsequent discovery. See id., 284. We conclude that there existed a genuine issue of material fact with respect to whether the repose section of the statute of limitations contained in § 52-584 was tolled by the defendant's ongoing failure to warn the plaintiff of his concern of cancer, triggering the continuing course of conduct doctrine. Accordingly, we conclude that it was improper for the trial court to have concluded that, as a matter of law, there was no continuing course of conduct, and,

[9] The defendant also argues that both the pathology report and the note essentially speak to the same medical condition, and that, therefore, there is no medical basis upon which to conclude that he did not convey his actual diagnosis. As the defendant conceded in oral argument before this court, however, this is an argument that was not raised in the motion for summary judgment before the trial court, and did not serve as a basis for its opinion or indeed the opinion of the Appellate Court. The defendant, as the moving party, was required to assert and support this claim with adequate documentation at trial. In the absence of such evidence, this court is not able to assess that claim properly.

Additionally, the defendant argues that, despite the plaintiff's assertions to the contrary, he did provide a complete diagnosis by identifying the tissue sample as being "atypical." Whether that term is too vague to be meaningful, whether it is sufficient for a pathologist to provide only what he considers to be the most likely impression of a tissue sample, whether he need only relate actual findings of cancer as opposed to "concerns," and whether the standard of care requires him to provide a list of possible interpretations when he is unable to arrive at a specific diagnosis, are all issues that are directed more accurately to the substantive allegations of negligence, and not to whether there was a continuing duty that tolls the statute of limitations.

therefore, it was improper for the trial court to have granted the defendant's motion for summary judgment.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings according to law.

In this opinion the other justices concurred.