[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' MOTION FOR SUMMARY JUDGMENT
On August 5, 1998, plaintiff Sheila Cook commenced the present action by serving a one-count complaint on the defendant, Allan Frankel. This action arises out of the defendant's alleged medical malpractice in providing dental services to the plaintiff. The plaintiff asserts in her complaint three claimed bases for liability: first, that the defendant failed to warn the plaintiff of the known risks involved in the treatment and to obtain her informed consent; second, that the defendant failed to CT Page 13468-a install properly dental bridgework in the plaintiff's mouth; and third, that the defendant failed to remedy the alleged improper installation.
Defendant Allan Frankel has filed an answer to the complaint and a special defense. In his answer he denies the claims that he committed malpractice. Furthermore, he alleges in his special defense that the plaintiff's action is barred by that part of General Statutes § 52-584
— the statute of limitations — which limits the time for bringing this lawsuit in medical negligence to two years from the date of the alleged injury.
The defendant has filed a motion for summary judgment on the plaintiff's complaint, based upon his claim — set out in his special defense — that this lawsuit in medical malpractice was brought more that two years after the alleged medical negligence and as such is time barred by the two-year period of limitation for bringing such a lawsuit. Accompanying his motion for summary judgment is memorandum of law to which he attached nine exhibits. The plaintiff has filed an objection to the motion. In her memorandum of law in objection to the defendant's motion, the plaintiff asserts that a genuine issue of material fact exists as to when the statute of limitations began to run, and that therefore the motion for summary judgment should be denied.
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted; citation omitted). Miles v. Foley, 253 Conn. 381,385-86, 752 A.2d 503 (2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Witt v. St. Vincent's Medical Center, 252 Conn. 363,368, 746 A.2d 753 (2000). "Summary judgment may be granted where the claim is barred by the statute of limitations." Doty v. Mucci,238 Conn. 800, 806, 679 A.2d 945 (1996). Summary judgment is appropriate when material facts concerning the statute of limitations are not in dispute. . . ." Burns v. Hartford Hospital, 192 Conn. 451, 452,472 A.2d 1257 (1984). CT Page 13468-b
The defendant argues in support of his motion for summary judgment that the plaintiff's cause of action is barred by General Statutes § 52-584, the statute of limitations that applies to medical malpractice actions. Section 52-584 provides, in pertinent part,: "No action to recover damages for injury to the person . . . caused by malpractice of a physician, surgeon, dentist . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of. . . ." Specifically, the defendant argues that the plaintiff brought her cause of action more than two years from the date when she first sustained or discovered her alleged injury. The parties focus their arguments not on that portion of General Statutes § 52-584 that bars an action instituted more than three years from the date of the "act or omission" complained of, but on that portion of the statute which limits the bringing of the action to "two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered. . . ."
At oral argument on the motion for summary judgment, counsel agreed that the controlling issue in deciding this motion is whether the statute of limitations commences running at the time the defendant last treated the plaintiff, on a date between May 8, 1996, and July 1, 1996. The plaintiff argues that the statute of limitations was tolled and did not commence to run until this time period pursuant to the continuous treatment doctrine. She also submitted a copy of a petition under Conn. Gen. Stat. Sec. 52-190a(b) granting an extension of 90 days to the therein represented limitation date of May 8, 1998.
The defendant's position at oral argument was that the two year statute of limitations runs from the date of the plaintiff discovery of her injury which, in this case, is not later than May 17, 1995, the date of a letter that was sent to the defendant by Dr. Kenneth S. Cohen proposing alternate remedial treatment for the plaintiff.
In his memorandum, the defendant argues that the events occurring between May of 1994 and May of 1995 suggest that the plaintiff was aware of the problems resulting from his installation of her bridgework, and that, by May of 1995, she was aware that she had sustained "actionable harm", which triggered the commencement of the statute of limitations. This is shown by her deposition testimony conceding an awareness of problems on May 17, 1995. CT Page 13468-c
The defendant also argues that the three theories of recovery set forth in plaintiff's complaint also serve to time-bar her action. They are: (1) the improper installation of dental bridges; (2) the failure to remedy the same; and (3) the failure to warn of attendant risks, resulting in lack of informed consent from the patient.
In her objection to the defendant's motion for summary judgment, the plaintiff argues that the commencement of the two-year limitations period was tolled under the continuous treatment doctrine until such time as she terminated her physician/patient relationship with the defendant; namely, shortly after May 8, 1996. She argues that under this doctrine the action would not be time-barred until May 8, 1998, and, because of the statutory ninety-day extension which she obtained, her action was brought within the limitations period. Neither party submitted affidavits from medical experts addressing the defendant's ongoing duty of care to the plaintiff, nevertheless, the defendant submitted a letter written to him by Dr. Cohen in which Dr. Cohen recommends the removal of the lower bridge installed by the defendant and the substitution of either a removable partial denture or the installation of implants. The argument is that this letter provides evidence that the defendant's breach of duty to the plaintiff existed at least a year after the time of the alleged wrongful act or omission.
General Statutes § 52-584 bars the institution of a medical malpractice action more than two years after the date of the discovery of the injury, or, the exercise of reasonable care, the date on which said injury should have been discovered. "In this context an injury occurs when a party suffers some form of actionable harm. The harm need not have reached its fullest manifestation before the statutes begins to run."Burns v. Hartford Hospital, supra, 192 Conn. 460. "Actionable harm is the discovery of a causal relationship between the alleged negligence of a defendant and the resulting injury sustained by a plaintiff." Catz v.Rubenstein, 201 Conn. 39, 44, 531 A.2d 98 (1986).
Pursuant to the continuous treatment doctrine, "When . . . the injurious consequences arise from a course of treatment, the statute [of limitations] does not begin to run until the treatment is terminated." (internal citations omitted; internal quotation marks omitted). Connellv. Colwell, supra, 214 Conn. 253.
In Blanchette v. Barrett, 229 Conn. 256, 640 A.2d 74 (1994), a medical malpractice action based upon the alleged negligent failure of a physician to monitor a breast cancer patient, the court further expanded CT Page 13468-d upon the doctrine by stating that "[s]o long as the relation of physician and patient continues as to the particular injury or malady which [the physician] is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased. That does not mean that there must be a formal discharge of the physician or any formal termination of his [or her] employment. If there is nothing more to be done by the physician as to the particular injury or malady which he [or she] was employed to treat or if he [or she] ceases to attend the patient therefor, the treatment ordinarily ceases without any formality." (Internal quotation marks omitted; internal citations omitted.) Id. at 275. In addition, the court noted that the determination of whether the physician/patient relationship has terminated depends upon several factors, such as regular office visits, the physician's awareness of the patient's trust and confidence in his abilities and reliance upon his advice and the retention of the patient's medical records by the physician.
In discussing the elements of the continuous treatment doctrine, the court further noted the similarity and overlap between this doctrine and the doctrine which Connecticut courts have labeled the "continuing course of conduct" doctrine. Id at 275.
Connecticut courts have applied both the continuous treatment doctrine and the continuing course of conduct doctrine to the statute of limitations. "To support a finding of a continuing course of conduct that may toll the statute of limitations, there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." (Internal quotation marks omitted; internal citations omitted.)Fichera v. Mine Hill Corporation, 207 Conn. 204, 209, 541 A.2d 472
(1988). "Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Id.
In applying either doctrine, the trier of fact is required to find: "(1) an ongoing physician/patient relationship that had not terminated . . . the last time the plaintiff had consulted with the defendant; (2) negligence by the defendant [the last time that the plaintiff consulted him] and (3) some form of treatment or required conduct that continued beyond [the date of the last consultation]." Blanchette v. Barrett, CT Page 13468-e supra, 229 Conn. 278.
In determining the applicability of the statute of repose portion of General Statutes § 52-584, the court in Sherwood v. DanburyHospital, 252 Conn. 193, 746 A.2d 730 (2000) followed the two-prong test of Blanchette that in order to find that a duty from the physician to the patient "continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Sherwood v.Danbury Hospital, supra, 252 Conn. 203. There, the court concluded that there was a genuine issue of material fact with respect to whether the defendant committed an initial wrong upon the plaintiff by failing to inform him that the blood with which he was transfused had not been screened. Sherwood v. Danbury Hospital, supra, 252 Conn. 206. Such a failure is similar to the continuing failure to monitor as demonstrated in Blanchette v. Barrett, (Internal citations omitted.). Sherwood v.Danbury Hospital, supra, 252 Conn. 208.
In that case, the plaintiff submitted evidence of the breach of duty that remained in existence after commission of the original wrong, in the form of an uncontroverted affidavit from a blood bank director regarding a notification program which she had instituted for transfusion recipients of unscreened blood. Such evidence establishes a genuine issue of material fact with respect to whether the repose section of General Statutes § 52-584 was tolled by the defendant's continuing course of conduct. Sherwood v. Danbury Hospital, supra, 252 Conn. 209.
This decision, in a lengthy footnote, not only distinguished between the elements of the continuous treatment doctrine and the continuing course of conduct doctrine, but also helped to explain the overlap of these two doctrines, first noted in Blanchette v. Barrett, supra,229 Conn. 256, and now apparent in this action. "When . . . there is no evidence that the plaintiff received any treatment beyond his or her last visit with the defendant . . . the continuing treatment doctrine does not apply. In this case, (i.e., Sherwood v. Danbury Hospital) there was a genuine issue of material fact with respect to whether the defendant had failed to perform certain required conduct. Therefore, a jury reasonably could conclude that the continuous course of conduct doctrine applies in this case." (Parenthetical material not in original.). Sherwood v.Danbury Hospital, supra, 252 Conn. 210 fn 14.
In a subsequent "continuing course of conduct" decision, Witt v. St.Vincent's Medical Center, 252 Conn. 363, 746 A.2d 753 (2000), the court CT Page 13468-f reiterated the elements of that doctrine as first set forth in Blanchettev. Barrett, supra, 229 Conn. 256: "[W]e must determine if there is a genuine issue of material fact with respect to whether the defendant: (1) committed an original wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." Witt v. St. Vincent's MedicalCenter, supra, 252 Conn. 370.
In Witt v. St. Vincent's Medical Center, the court also noted that the case before it was the only medical malpractice action in the group consisting of cases including Blanchette v. Barrett, in which the plaintiff did not offer an affidavit from an expert attesting that the defendant had a duty to take some affirmative conduct subsequent to the initial medical procedure. "We do not, however, deem that failure to be fatal. Whether there was an initial wrong and whether there existed a duty that remained in existence after the commission of the original wrong related thereto were issues on which the defendant, as the summary judgment movant, bore the burden of proof." Witt v. St. Vincent's MedicalCenter, supra, 252 Conn. 372 fn 7. In that case, the evidence presented by the parties was limited to the defendant's sworn affidavit concerning a notation on a medical report sent by the defendant to the plaintiff's then treating physician eleven years after the defendant diagnosed an excised lymph node of the plaintiff as non-cancerous. The defendant's notation to the plaintiff's physician stated that ". . . at the time
[emphasis added] we were concerned that [the plaintiff] might be evolving a small lymphocytic lymphoma/CCL." Wilt v. St. Vincent's Medical Center, supra, 252 Conn. 365. Such an admission gives rise to the question of whether the defendant had a continuing duty to the plaintiff to monitor his condition after preparing the pathology report, as discussed inBlanchette v. Barrett, supra.
From the foregoing the court finds that the defendant has not met his burden of proving that there is no genuine issue of material fact as to whether the continuous treatment or continuing course of conduct doctrine applies to toll the statute of limitations. On the contrary, the evidence suggests that the plaintiff consulted with the defendant as late as May or June of 1996 with complaints relating back to the installation of her bridgework. Clearly, this matter should be resolved by the trier of fact.
Because of the existence of the aforesaid genuine issue of material fact, the defendant's motion for summary judgment should be and hereby is denied. CT Page 13468-g
Clarance J. Jones, Judge