[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendants to this action, Harriet Kotsoris, M.D. (#199), Kristan V. Zimmerman, M.D. (#186), Diagnostic Imaging Center (#180) and The Stamford Hospital (#190), all move for summary judgment or join co-defendants in cross-motions for summary judgment.[1]
This case is a medical malpractice action brought by the plaintiff, Shelley Zielinsky, to recover for injuries sustained as a result of an alleged misreading of an magnetic resonance imaging (MRI) film conducted in 1996.[2] The plaintiff's husband, Brian Zielinsky, filed a count alleging loss of consortium, but Shelley Zielinsky will be referred to as the plaintiff in this decision. The plaintiff alleges that professional malpractice occurred when Dr. Kotsoris, a neurologist, and Dr. Zimmerman, a radiologist, both failed to detect her brain tumor in a 1996 MRI film. The brain tumor was subsequently discovered in 1999 and operated on shortly thereafter.
These motions present two central issues. The first concerns whether the applicable statute of limitations bars the plaintiff's claim. The second issue is whether the allegations establish a sufficient employment relationship between Diagnostic Imaging Center and Dr. Zimmerman in order to hold Diagnostic Imaging Center vicariously liable for Zimmerman's alleged malpractice.
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Quotation marks omitted.) Pelletier v. Sordini/Skanska Construction Co.,262 Conn. 372, 376, 815 A.2d 82 (2003). "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial CT Page 3945 evidence . . . A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. UrbanDevelopment Commission, 158 Conn. 364, 378-79, 260 A.2d 596 (1969).
"Mere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue . . . It is not enough that one opposing a motion for summary judgment claims that there is a genuine issue of material fact; some evidence showing the existence of such an issue must be presented in the counter affidavit . . . Pursuant to Practice Book § 17-46, [s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated therein . . ." (Citations omitted; internal quotation marks omitted.) Stokes v. Lyddy,75 Conn. App. 252, 815 A.2d 263 (2003). Additionally, "it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Citations omitted.) New Milford Savings Bank v. Roina, 38 Conn. App. 240, 244-45,659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995). Moreover, "[s]ummary judgment may be granted where the claim is barred by the statute of limitations." Doty v. Mucci, 238 Conn. 800, 806,679 A.2d 945 (1996).[3]
 I. STATUTE OF LIMITATIONS
All the defendants contend that the plaintiff's claim is barred by the applicable two-year statute of limitations applicable to medical malpractice actions codified in General Statutes § 52-584.[4] "The statute of limitations begins to run when the breach of duty occurs. When the injury is complete at the time of the act, the statutory period commences to run at that time." Blanchette v. Barrett, 229 Conn. 256,274, 640 A.2d 74 (1994). The plaintiff filed this complaint with the court on September 17, 2001 and commenced the action by serving process on the defendants in the same month. Although the initial alleged misdiagnosis at issue was conducted in 1996, the plaintiff was first informed about her brain tumor on December 11, 1999 after the MRI conducted in that year.
The plaintiff argues that the statute of limitations has been tolled under the "continuing course of conduct" doctrine. Our Supreme Court has stated that "a statute of limitations or repose may be tolled under the CT Page 3946 . . . continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date . . . [T]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Citations omitted.) Witt v. St. Vincent's Medical Center, 252 Conn. 363,369, 746 A.2d 753 (2000).
Accordingly, in order to address these motions for summary judgment this court "must determine if there is a genuine issue of material fact with respect to whether the defendants: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." Id.
(1) AN INITIAL WRONG
 Dr. Zimmerman
The plaintiff alleges in the revised complaint that "Kristan Zimmerman and Diagnostic Imaging Center failed to observe, appreciate, diagnose and report the early brain tumor as revealed in the April 10, 1996 magnetic resonance imaging. . . . The December 10, 1999 magnetic resonance imaging with contrast revealed a 2.2 centimeter mass in the fourth ventricle of Shelley Zielinski's brain."
Dr. Zimmerman argues in her motion for summary judgment that she "interpreted radiographic studies of the plaintiff on two occasions. On January 4, 1996, Dr. Zimmerman interpreted a CT scan of the plaintiff's head. On April 10, 1996, Zimmerman interpreted an MRI of the brain." Zimmerman states in a signed affidavit attached to the motion that: "On January 4, 1996, I interpreted a CT scan of the head of Shelly Zielinski as `normal unenhanced and enhanced cranial C.T.' . . . On April 10, 1996, I interpreted a MRI of the brain of Shelly Zielinski ordered by Harriet Kotsoris, M.D. as `Mucosal thickening of the left maxillary sinus. Otherwise, negative study.' . . . I had no other involvement in the care and treatment of Shelley Zielinski."
In support of her objection to the motions for summary judgment, the CT Page 3947 plaintiff included a report of radiologist William Harvey, M.D. from the December 10, 1999 MRI that states in a handwritten note below the typed report that he: "told [patient] 12/10/99 . . . met w/her + husband 12/11 AM — 1996 films reviewed . . . Vernal lesion present then — surgery ASAP, decided in Cornell . . . transfer/admission TBA . . .ependymoma." (Emphasis added.) The affidavits accompanying the plaintiff's objection to summary judgment demonstrate an issue of material fact as to whether Zimmerman's initial evaluation of the plaintiff's MRI was incorrect.
 Dr. Kotsoris
The plaintiff alleges that the neurologist, Dr. Kotsoris, committed an initial wrong in the revised complaint: "The magnetic resonance imaging performed on April 10, 1996 at Stamford Hospital revealed an early brain tumor in the fourth ventricle . . . The radiologist, Kristan Zimmerman, failed to report the early brain tumor as revealed in the April 10, 1996 magnetic resonance imaging . . . Harriet Kotsoris failed to observe, appreciate, diagnose and report the early brain tumor as revealed in the April 10, 1996 magnetic resonance imaging . . . Despite the fact that testing for Lyme Disease was negative or inconclusive, and despite the fact that Shelley Zielinski's symptoms remained unchanged, Dr. Kotsoris failed to consider other causes of Shelley Zielinski's symptoms and waited over three years to repeat magnetic resonance imaging."
In her motion for summary judgment, Dr. Kotsoris states that "[a]fter considering the negative MRI report from Dr. Zimmerman, in April of 1996, [she] began to treat Mrs. Zielinski for Lyme disease by prescribing antibiotics. The antibiotics showed signs of success as evidenced by Dr. Kotsoris's notation of `so far so good' in the April 27 entry on the medical chart. Finally on September 25, 1996, patient reported that she `feels great!! . . . [Medication] working.'" There have been no other affidavits or evidence presented to the court by Kotsoris to counter the plaintiff's allegation that the doctor failed to detect her brain tumor in the 1996 MRI and thereby breached the duty of care owed the plaintiff. As discussed above in relation to Zimmerman, the plaintiff has offered evidence in her objection to summary judgment establishing that an issue of material fact exists as to whether or not the 1996 MRI revealed or should have revealed a brain tumor or lesion to Kotsoris upon a proper evaluation of the film.
(2) CONTINUING DUTY RELATED TO INITIAL WRONG
Secondly, the court must determine whether the defendants owed a continuing duty to the plaintiff. "In determining whether the continuing CT Page 3948 course of conduct doctrine applies to toll the repose section of the statute of limitations contained in § 52-584 [this court has held that] in the medical treatment context, that continuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct." (Citations omitted; internal quotation marks omitted.) Witt v. St.Vincent's Medical Center, supra, 252 Conn. 371. "[In] the absence of a continuing special relationship, there must be a subsequent wrongful act that is related to the prior negligence." Id.
 Dr. Kotsoris
The plaintiff alleges in the revised complaint that "on December 10, 1999, Harriet Kotsoris referred Shelley Zielinski to Stamford Hospital for magnetic resonance imaging of the brain with contrast . . . The December 10, 1999 magnetic resonance imaging with contrast revealed a 2.2 centimeter mass in the fourth ventricle of Shelley Zelinski's (sic) brain . . . Immediately thereafter, Harriet Kotsoris recommended that Shelley Zielinksi (sic) undergo a surgical procedure . . . As a result of the untimely diagnosis and report, Shelley Zielinski's brain tumor treatment was delayed by over three years, allowing the growth to further infiltrate her brain and cause irreversible brain damage."
Dr. Kotsoris asserts in her motion for summary judgment that "[a]though Shelley Zielinski subsequently treated with [me] for a brief period in 1996 after the alleged misdiagnosis, the injury alleged in the Revised Complaint did not arise from that course of subsequent treatment; the alleged injury was complete at the time of the alleged misdiagnosis even if the injurious consequences did not become apparent until later." Kotsoris also states that "in the instant case even when viewed most favorably to plaintiffs, the statute of limitations and repose began to run in December of 1996, when Mrs. Zielinski chose to stop taking the antibiotic, and expired in December of 1999, three years later."
This court finds these arguments unconvincing. There are no affidavits submitted to counter the plaintiff's allegations that Dr. Kotsoris referred the plaintiff for another MRI, then recommended that she undergo surgery to remove the subsequently discovered brain tumor. Kotsoris has not sustained her burden of proving the absence of a disputed material fact involving her continuing special relationship with the plaintiff. Moreover, in her objection to summary judgment, the plaintiff has included reports from Kotsoris that indicate that it is a question to be submitted to the trier of fact as to whether or not Kotsoris and plaintiff maintained a special relationship. In a medical report provided by the plaintiff, Kotsoris refers to Zielinski as being "well known to me from the past." There exists substantial evidence creating an issue of CT Page 3949 material fact sufficient to make a difference in the outcome of the case.
 Dr. Zimmerman
In Dr. Zimmerman's affidavit attached to her motion for summary judgment, she states that "On January 4, 1996, I interpreted a CT scan of the head of Shelly (sic) Zielinski as `normal unenhanced and enhanced cranial C.T.' . . . On April 10, 1996, I interpreted a MRI of the brain of Shelly (sic) Zielinski ordered by Harriet Kotsoris, M.D. as `Mucosal thickening of the left maxillary sinus. Otherwise, negative study.' . . . I had no other involvement in the care and treatment of Shelley Zielinski."
The court agrees with the plaintiff that there are sufficient questions raised as to the employment relationship between Diagnostic Imaging Center and Dr. Zimmerman. Issues of fact remain to be resolved as to Zimmerman's employment relationship with Diagnostic Imaging Center and how Stamford Radiological Associates, P.C., is intertwined in this dispute.
(3) SUBSEQUENT WRONGFUL CONDUCT
Finally, in the continuing course of conduct doctrine analysis, this court must "consider whether there was a genuine issue of material fact with regard to whether there was a continuing breach of that duty, that is, whether there was subsequent wrongful conduct." Witt v. St. Vincent'sMedical Center, supra, 252 Conn. 373. Here the plaintiff has alleged that Doctors Kotsoris and Zimmerman failed to properly diagnose her brain tumor in the 1996 MRI. A jury could reasonably find that this duty to disclose or correct the initial incomplete diagnosis lasted until the plaintiff was properly diagnosed and treated in December of 1999.
Based on the foregoing, the court denies all motions for summary judgment based on the statute of limitations.
II. VICARIOUS LIABILITY OF DIAGNOSTIC IMAGING CENTER/THE STAMFORD HOSPITAL
Diagnostic Imaging Center moved for summary judgment on the grounds that Dr. Zimmerman is not an employee or agent of Diagnostic Imaging Center and it therefore cannot be held vicariously liable for her acts.
In her revised complaint, the plaintiff states that "[a]t all relevant times, Kristan Zimmerman was employed by, an agent of or was otherwise CT Page 3950 affiliated with Diagnostic Imaging Center of Stamford." In support of its motion, Diagnostic Imaging Center included admissions from both The Stamford Hospital and Dr. Zimmerman.[5] Stamford Hospital admits that "Stamford had no legal relationship with Diagnostic Imaging Center of Stamford in 1996." Zimmerman's affidavit does not mention the status of her employment relationship with Diagnostic Imaging Center.
In her objection to summary judgment, the plaintiff has submitted The Stamford Hospital's responses to Diagnostic Imaging Center's interrogatories that raise an issue of fact as to the nature of Zimmerman's employment relationship Diagnostic Imaging Center.[6]
Thus, an issue of material fact remains as to what relationship existed among Zimmerman, Diagnostic Imaging Center, Stamford Radiological Associates, P.C. and The Stamford Hospital. At this point, issues of fact remain disputed bearing on the outcome of the case. Diagnostic Imaging Center's motion for summary judgment based on the claim that it is not vicariously liable for the acts of Kristan Zimmerman is denied.
The Stamford Hospital's motion for summary judgment contends that since it did not directly care for the plaintiff, the only possible basis for its liability would be "apparent agency." Its motion states that it is entitled to judgment if the statute of limitations "has run against the other defendants." Since their motions for summary judgment have been denied, the motion by the Hospital is also denied.
It is settled law in Connecticut jurisprudence that the party seeking summary judgment "has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles or substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted.) Appleton v. Board of Education of Stonington,254 Conn. 205, 209, 757 A.2d 1059 (2000). In this case the moving parties have failed to meet their burden of proving the absence of issues of material fact and the nonmoving party has met her burden of demonstrating that such material facts both exist and are disputed.
Therefore, all motions of the various defendants for summary judgments are denied.
So Ordered.
Dated at Stamford, Connecticut, this 24th day of March 2003.
William B. Lewis, Judge T.R. CT Page 3951