DAISY HERNANDEZ *v.* WILLIAM CIRMO
(AC 21138)

Foti, Flynn and O'Connell, Js.

Argued October 30, 2001—officially released January 8, 2002

*Neil Johnson,* for the appellant (plaintiff).

*Albert G. Danker, Jr.,* for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff in this medical malpractice action, Daisy Hernandez, appeals from the judgment of

the trial court, which was rendered after it granted the motion for summary judgment that was filed by the defendant, William Cirmo, a licensed physician engaged in the practice of gynecology and obstetrics. The plaintiff claims that the court improperly (1) rendered summary judgment and (2) failed to accept additional evidence. We affirm the judgment of the trial court.

The plaintiff filed her original complaint in this action on April 23, 1999.[1] She alleged that the defendant negligently performed a tubal fulguration procedure on her on March 17, 1995.[2] She further alleged that as a result of the defendant's negligence, she became pregnant and, on September 16, 1998, gave birth to a child. She alleged that February, 1998, was the earliest time at which she reasonably could have known of her pregnancy. She claimed that the defendant was negligent in several specific ways in his care and treatment of her during the tubal fulguration procedure. She also claimed that the defendant "negligently failed to warn and/or inform [her] of the possibility and/or probability of an unsuccessful tubal ligation as a result of [the] defendant's surgical procedure." Finally, she alleged that the defendant's negligence caused her to sustain additional medical treatment, and will cause her to incur future expenses for raising, educating and caring for her child.

The defendant denied that he negligently treated the plaintiff. He pleaded, as a special defense, that the

---

[1] The plaintiff filed a revised complaint on June 21, 1999. By written requests filed September 1, 1999, and May 9, 2000, she requested leave to amend her revised complaint. The court did not act upon those requests, and the record does not reflect that the defendant objected to them. Pursuant to Practice Book § 10-60 (a), the plaintiff's latest amended complaint of May 9, 2000, is the operative complaint.

[2] Tubal fulguration involves the destruction of tissue in the fallopian tubes by means of high frequency electric sparks. It is intended to prevent the passage of ova from the ovaries to the uterus and is used as a method of female sterilization.

repose section of the statute of limitation, General Statutes § 52-584,[3] barred the action because the plaintiff commenced the action more than three years after the occurrence of the act complained of in her complaint. The defendant thereafter filed a motion for summary judgment on those grounds. He argued that the three year limitation period in § 52-584 began to run from the date on which the defendant performed the tubal fulguration procedure, March 17, 1995. The court initially denied the motion without prejudice to afford the plaintiff an opportunity to depose the defendant. The defendant subsequently renewed the motion and, after conducting a hearing, the court granted the motion. This appeal followed.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 250, 654 A.2d 748 (1995). Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. *Haesche* v. *Kissner*, 229 Conn. 213, 217, 640 A.2d 89 (1994). It is not enough, however, for the opposing party merely to assert the existence of . . . a dis-

---

[3] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

puted issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 665, 646 A.2d 143 (1994). *Branford* v. *Monaco*, 48 Conn. App. 216, 221–22, 709 A.2d 582, cert. denied, 245 Conn. 903, 719 A.2d 900 (1998). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . *Beebe* v. *East Haddam*, 48 Conn. App. 60, 64, 708 A.2d 231 (1998)." (Internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 50 Conn. App. 385, 387, 717 A.2d 811 (1998), aff'd, 252 Conn. 153, 745 A.2d 178 (2000).

Although the plaintiff does not dispute the fact that she brought the present action more than three years after the date of her surgery, she claims that the statute of limitations was tolled. The statute of limitations may be tolled under the continuous treatment or the continuing course of conduct doctrine. *Blanchette* v. *Barrett*, 229 Conn. 256, 265, 640 A.2d 74 (1994). To state a claim that satisfies either doctrine, a party must produce evidence of the breach of a duty that existed "after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." (Internal quotation marks omitted.) Id., 275. Courts have upheld findings that such a duty existed in cases where there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or later wrongful conduct of a defendant related to the prior act. Id. Our Supreme Court has stated that "[t]he existence of a duty is a question of law and only if such a duty is found to

exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, 246 Conn. 456, 483, 717 A.2d 1177 (1998). As such, our review of the trial court's conclusions is plenary.

"In deciding whether the trial court properly granted the defendant's motion for summary judgment, we must determine if there is a genuine issue of material fact with respect to whether the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 370, 746 A.2d 753 (2000).

We first consider whether a genuine issue of material fact existed with respect to whether the defendant committed an initial wrong as to the plaintiff. The plaintiff alleged in her complaint that the defendant negligently performed the tubal fulguration procedure and negligently failed to warn her of an increased risk that the procedure could fail. The plaintiff also submitted the affidavit of her expert medical witness, Joel Evans. Evans reviewed the defendant's operative notes and, on the basis of the information available to the defendant during the procedure, averred that he should have recognized the increased chances that the procedure could fail and should have ordered follow-up testing to determine its effectiveness. Although the defendant denied those allegations, he failed to produce an evidentiary foundation to eliminate the existence of the alleged initial medical malpractice. Accordingly, the plaintiff demonstrated the existence of a genuine issue of material fact in regard to that issue.

We next consider whether a genuine issue of material fact existed as to whether the defendant owed the plain-

tiff a duty of care that remained in existence after March 17, 1995, the date of the tubal fulguration procedure. The plaintiff does not dispute that there was no evidence to demonstrate the existence of a special relationship between the parties or that the parties were engaged in a continuing course of treatment. In the absence of either of those showings, the plaintiff needed to demonstrate the existence of a genuine issue of material fact as to whether the defendant had committed some affirmative acts of misconduct or acts of omission that related to the alleged initial negligent act. Id., 371.

The plaintiff claims that the defendant's subsequent wrongful conduct was a continued act of omission. The plaintiff argued before the trial court that the defendant had "a duty to warn the plaintiff of the consequences of his actions . . . at the time they *occurred*." The defendant averred that the last date on which he provided any treatment to the plaintiff was March 17, 1995. He also averred that he was unaware, both before and after performing the procedure, that the procedure had a greater than normal risk of failing.

The plaintiff points out that the defendant's operative notes, as well as his deposition testimony, demonstrate that he was aware of the presence of scar tissue on her fallopian tubes. She posits that because he knew of that condition, he *should* have also known that there were increased risks that the procedure could fail and that he should have communicated those risks to her. The only evidence that the plaintiff submitted to the court in regard to whether the defendant had any knowledge of an increased risk that her procedure could fail was in the form of Evans' affidavit, the defendant's operative notes and her argument that the defendant should have been aware of an increased risk. On the basis of his review of the defendant's operative notes and the transcript of the defendant's deposition, Evans averred that it was his expert medical opinion that the defendant

owed the plaintiff "a duty to inform [her] of the complications and order follow-up care, tests and/or surgery."

In *Witt*, our Supreme Court faced a similar issue. The plaintiff in *Witt* claimed that the defendant pathologist negligently failed to warn him that certain tissue analysis performed by him revealed that the plaintiff was suffering from a dangerous medical condition. In 1983, the defendant had examined a tissue sample and issued a report in which he did not describe the plaintiff's condition as serious. The plaintiff alleged that he had relied on that diagnosis. Eleven years later, in 1994, the plaintiff discovered that the condition that the defendant had evaluated in 1983 was, in fact, life threatening. Additionally, there was evidence that the defendant had told the plaintiff's treating physician in 1994 that there was a concern at the time of the original diagnosis that the plaintiff suffered from a life threatening condition and that the defendant believed that a follow-up examination would be appropriate. The plaintiff argued that the defendant's initial 1983 report was not complete and that the defendant's subsequent 1994 communication to his physician, expressing concern for the plaintiff's condition as of the time of the diagnosis, evidenced the defendant's awareness that the plaintiff was at an increased risk. Our Supreme Court concluded that the plaintiff had demonstrated that the defendant knew of a specific risk to the plaintiff in 1983 and failed to communicate that risk to the plaintiff. The court stated that the evidence that the defendant had knowledge of the risk "gave rise to the defendant's continuing duty to warn, which in turn triggered the continuing course of conduct doctrine." Id., 372.

The present case is distinguishable. Here, the plaintiff has not demonstrated that the defendant knew, at any time, of any increased risk. While the defendant's operative notes reflect that the defendant was aware of scarring in the plaintiff's fallopian tubes at the time of the

tubal fulguration procedure, they do not reflect that this scarring caused the defendant concern in any way, even if the plaintiff could have shown that such scarring should have caused such concern. The defendant pathologist in *Witt* later communicated to the plaintiff's physician in a written note that at the time of the diagnosis, there were concerns that the plaintiff might be suffering from a life threatening condition. That evidenced that the defendant had awareness of a risk. Here, the plaintiff has not presented any like evidence.

Likewise, the plaintiff in *Witt* alleged in his complaint that the defendant "was aware" of the specific risk involved in that case. Here, the plaintiff alleged in her complaint simply that the defendant had failed to warn her of a risk. She continually argues that the defendant "should have" known of those risks. She argued to the court that "it is the defendant's lack of knowledge on the risks of this procedure that is the essence of this case." Although the defendant may have acted negligently by failing to realize a risk when he should have, that is not the issue before us. The issue before us is whether the defendant was under a continuing legal duty to warn the plaintiff of a specific risk.

The plaintiff argues that *Cross* v. *Huttenlocher*, 185 Conn. 390, 400, 440 A.2d 952 (1981), applies to the present case. She posits that "[t]he negligent failure to warn is a continuing course of conduct." Although we are bound by *Cross*, we do not interpret that decision to stand for the proposition that all claims of negligent failure to warn in medical malpractice cases fall under the continuous course of conduct doctrine. Such a broad interpretation would have the effect of eviscerating the statute of limitations.

The Supreme Court in *Cross* held that the trial court improperly concluded that the plaintiff's claim did not fall under the continuous course of conduct doctrine.

The plaintiff had claimed that one of the defendant physicians failed to warn her of the harmful side effects of a drug that he prescribed to her. The court concluded that the statute of limitations was tolled because the plaintiff continued to ingest the drug over a period of time during which the defendant failed to warn her of the risks involved. In other words, the evidence demonstrated the existence of a long-standing physician-patient relationship between the parties. Importantly, the court noted that the defendant had failed to "point to any evidence from which the jury could have concluded that this continuing course of conduct terminated more than three years before suit was brought." Id. Although "no ongoing relationship is required for the continuing course of conduct doctrine to apply"; *Golden* v. *Johnson Memorial Hospital, Inc.*, 66 Conn. App. 518, 529, 785 A.2d 234, cert. denied, 259 Conn. 902, 789 A.2d 990 (2001); the presence of a long-term and continuing physician-patient relationship in *Cross* weighed in favor of the applicability of the doctrine.

In *Golden*, the plaintiff argued that his claim fell under the continuing course of conduct doctrine because the defendant pathologist in that case breached his duty to warn the plaintiff of an increased medical risk following an original misdiagnosis. As in the present case, the only evidence adduced that the defendant actually had knowledge that the plaintiff was at risk came in the form of an affidavit from the plaintiff's expert medical witness, who attested that the defendant "should have known" of his original misdiagnosis and the attendant increased risks related to that misdiagnosis. Id., 527.

As in *Golden*, there is nothing in the record before us to demonstrate that the defendant had any concern about an increased risk. Likewise, we conclude that "to expect [the defendant] to provide follow-up treatment or to instruct [the plaintiff] on follow-up care after a negative diagnosis when there is no awareness that the diagnosis is wrong and there is no ongoing relationship

is beyond the expectation of public policy." Id., 529. Here, the plaintiff failed to demonstrate that the defendant was aware of a misdiagnosis or an increased risk. Although the duty to monitor a patient, even after a negative diagnosis or a seemingly successful medical procedure may be found in certain cases, it customarily arises out of an ongoing physician-patient relationship. See id. As we have discussed, no such relationship existed here.

We have previously recognized that in summary judgment cases, "[t]he inference which may ordinarily be drawn from the failure of a party to file an opposing affidavit is not warranted where the other party is the only person having knowledge of the particular facts involved." (Internal quotation marks omitted.) Nolan v. Borkowski, 206 Conn. 495, 504, 538 A.2d 1031 (1988); see also Kroll v. Sebastian, 58 Conn. App. 262, 267, 753 A.2d 384 (2000) (nonmovant's failure to recite specific facts to contradict those stated in movant's papers to show existence of genuine issue of fact "is not fatal [to his or her case] if the only evidence available to the nonmovant is within the personal knowledge of the movant"). The application of that rule, however, is better suited in cases in which the issues involve "questions of motive, intent and subjective feelings and reactions." (Internal quotation marks omitted.) Nolan v. Borkowski, supra, 505.

We would not expect the plaintiff to somehow counter the defendant's averments about his lack of awareness of a risk with her own affidavit concerning what he was aware of concerning an increased risk. To so require would ask the plaintiff to perform an impossible task. Our review of the granting of a motion for summary judgment in such a case is to ask whether, under the circumstances of the particular case, the absence of a counteraffidavit should have affected the outcome.

We conclude that summary judgment was appropriate under the circumstances of this case. The plaintiff failed to counter the defendant's affidavit with *any* evidence to demonstrate that the defendant had an awareness of risk. The plaintiff's allegations required her to provide evidence of the defendant's awareness of risk. Viewing the evidence that she presented in the light most favorable to her, we cannot say that she has met that burden. Speculative evidence about whether a defendant physician was aware of a specific medical risk cannot serve as a basis for opposition to a motion for summary judgment. The evidence did not demonstrate in any way that the defendant was aware of an increased risk or that he ever was made aware that the plaintiff was at an increased risk. As such, her assertions concerning what the defendant should have been aware of would not have supported a judgment for the plaintiff, and the summary judgment therefore was rendered properly.

Our Supreme Court explained this principle in a case involving a claim against a physician for an alleged failure to warn following a misdiagnosis. The court "disagree[d] with the premise that a physician who has performed a misdiagnosis has a continuing duty to correct that diagnosis in the absence of proof that he subsequently learned that his diagnosis was incorrect." *Blanchette* v. *Barrett*, supra, 229 Conn. 284. The Supreme Court further explained that "[t]o apply such a doctrine to a medical misdiagnosis would, in effect, render the repose part of the statute of limitations a nullity in any case of misdiagnosis." Id. Those concerns apply with equal force to the present case, which deals with a physician who allegedly failed to be aware of an increased risk.

The court in the present case had nothing before it that would establish a genuine issue of material fact as to whether the defendant later committed wrongful

conduct related to the initial negligent act that was alleged in the complaint or whether a special relationship existed between the parties after the date of the initial allegedly negligent act. The evidence clearly reflected that neither scenario existed. Accordingly, the plaintiff's claim must fail under the three year statute of limitations, § 52-584.

We have reviewed the plaintiff's additional claim that the court improperly failed to accept supplemental evidence and conclude that it is without merit.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The basis of that claim is unclear. The plaintiff argues that at the hearing on the motion for summary judgment, she requested from the court the opportunity to submit additional affidavits or live testimony from her expert witness. As she admits, the court neither accepted nor declined her offer. The record does not reflect that the plaintiff did submit additional evidence, that the court refused to accept such supplemental evidence or that the plaintiff requested a continuance in that regard. "Where . . . the party opposing summary judgment timely presents his affidavit . . . stating reasons why he is presently unable to proffer evidentiary affidavits he directly and forthrightly invokes the trial court's discretion." (Internal quotation marks omitted.) *Altfeter* v. *Naugatuck*, 53 Conn. App. 791, 806, 732 A.2d 207 (1999). On the record before us, which reflects that the plaintiff had approximately one year to prepare for the hearing on the defendant's motion, we are unable to find an abuse of the court's discretion. See also *Sullivan* v. *Yale-New Haven Hospital, Inc.*, 64 Conn. App. 750, 761, 785 A.2d 588 (2001) (no abuse of discretion in allowing defendants' filing of supplemental motion for summary judgment as plaintiff had ample time to prepare opposition to such motions).