[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (216.00)
 I — BACKGROUND AND PRIOR PROCEEDINGS
The plaintiffs, Christopher, Andrea and David Neuhaus, served this action on the defendants, Corinne Decholnoky, M.D. and Stamford Hospital on July 25, 1996. On May 26, 2000, the plaintiffs filed a third amended complaint with ten counts. In counts one through six, the plaintiffs claim negligence, emotional distress, loss of filial consortium and CT Page 7149 fraudulent concealment of these three claims against Dr. Decholnoky. In counts seven through ten, the plaintiffs claim negligence, emotional distress and fraudulent concealment of these two claims against Stamford Hospital.[1] These claims arise out of the following allegations of fact by the plaintiffs.
Andrea Neuhaus saw her obstetrician, Dr. Decholnoky, from February 19, 1990, until August, 1990, while pregnant with her son, Christopher Neuhaus. At thirty-seven weeks into the term of the pregnancy, after a discussion with Decholnoky, Andrea Neuhaus decided to have the birth of her child induced. She was admitted to Stamford Hospital shortly thereafter, and gave birth to Christopher Neuhaus on September 17, 1990. The plaintiffs now claim that Christopher Neuhaus suffers from certain injuries as a result of the inducement at thirty-seven weeks. They allege that Decholnoky failed to care adequately for Andrea and Christopher Neuhaus during the pregnancy, labor, delivery and post-natal period; failed to perform an amniocentesis while Andrea Neuhaus was pregnant; failed to test Christopher Neuhaus' lung maturity; failed to permit Andrea Neuhaus to carry Christopher Neuhaus to full term; misdiagnosed the meaning of Christopher Neuhaus' head size; and failed to understand the information provided to her by Yale New Haven Hospital regarding Christopher Neuhaus' head size. In count seven, the plaintiffs allege that Stamford Hospital was negligent in caring for Andrea and Christopher Neuhaus, beginning on September 17, 1990. The plaintiffs allege that Stamford Hospital failed to provide adequate care and treatment for Andrea and Christopher Neuhaus, breached its duty to perform an amniocentesis, permitted the premature inducement of Christopher Neuhaus without confirming his lung maturity, and delivered Christopher Neuhaus with immature lungs. The plaintiffs allege that, as a result of the actions of Decholnoky and Stamford Hospital, Christopher Neuhaus suffered permanent injuries such as "a. respiratory distress syndrome [(RDS)]; b. pneumothorax; c. use of respirator and intubation; d. brain damage; e. cerebral palsy; f. expressive and receptive language deficits; g. fine and gross motor control deficits; h. hand-eye coordination and manual dexterity deficits; i. hypotonia; j. ankle clonus; k. scapular winging and forefoot pronation; l. neurological, physiological and psychological sequelae." (Complaint, count one, ¶ 5)[2]
Stamford Hospital filed a motion for summary judgment with a memorandum of law on November 8, 2001. Stamford Hospital contends that the plaintiffs' claims are barred by the statute of limitations provided in General Statutes § 52-584, and that the plaintiffs cannot provide any evidence showing that it intentionally concealed a cause of action from them. In support of its motion, Stamford Hospital submitted various exhibits, including the depositions of Decholnoky, Andrea Neuhaus, David Neuhaus and Cecil Windels, a pediatrician, as well as the affidavit of CT Page 7150 Gerald Rakos, M.D., Director of the Newborn Intensive Care Unit at Stamford Hospital.
In response to Stamford Hospital's motion for summary judgment, the plaintiffs filed a memorandum in opposition dated January 28, 2O02.[3]
The plaintiffs argue that the three-year statute of limitations in §52-584 was tolled until the time that the plaintiffs discovered the extent of Christopher Neuhaus' injuries and the defendants' negligence. They also argue that the statute was tolled because the defendants fraudulently concealed any cause of action that the plaintiffs may have had against them. Finally, they argue that § 52-584 violates Christopher Neuhaus' right to redress and his equal protection rights and is, therefore, unconstitutional. On February 5, 2002, the plaintiffs submitted two supplemental memoranda in opposition to the motion for summary judgment. In the first supplemental memorandum, they argue that Stamford Hospital committed an initial wrong against the plaintiffs by not advising the parents of the treatment afforded Christopher and of Christopher's prognosis, and that Stamford Hospital owed the plaintiffs a continuing duty to so advise that it breached. In the second supplemental memorandum, the plaintiffs argue that Stamford Hospital is liable for Christopher Neuhaus' injuries because it had a special relationship with Christopher Neuhaus at the time that he sustained the initial injury. Also on February 5, 2002, the plaintiffs filed the original affidavits of Marcus Hermansen, a pediatrician, and Andrea Neuhaus in support of their arguments. On February 6, 2002, the plaintiffs filed a third supplemental memorandum in which they offer excerpts from Dr. Rakos' deposition showing that Stamford Hospital failed to tell Andrea Neuhaus and David Neuhaus that Christopher Neuhaus was at risk for long term injuries associated with RDS. Stamford Hospital filed a memorandum in reply to the plaintiffs' objection on February 11, 2002.
 II — DISCUSSION
Pursuant to Practice Book § 17-49, a motion for summary judgment shall be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205 (2000).
A. The Statute of Limitations
CT Page 7151
Stamford Hospital argues that the plaintiffs' claims are barred by the statute of limitations. Section 52-584 provides a two-year statute of limitations period for bringing a negligence action for injuries sustained as a result of medical malpractice. The statute contains an additional repose section which states in relevant part that "[n]o action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon . . . [or] hospital . . . may be brought more than three years from the date of the act or omission complained of. . . ." The phrase "date of the act or omission complained of" means "the date when the negligent conduct of the defendant occurs and . . . not the date when the plaintiff first sustains damage." (Internal quotation marks omitted.) Blanchette v. Barrett, 229 Conn. 256,265 (1994). Thus, a medical malpractice cause of action cannot be brought more than three years after the negligent conduct occurred. Id.
It is undisputed that the alleged negligent acts including the decision to induce birth and the failure to administer amniocentesis, as well as the entire duration of Christopher's stay at Stamford Hospital after birth occurred in September and October, 1990. The plaintiffs served the initial complaint in this action in July, 1996, well beyond the three year repose provision of § 52-584. Unless the three year period of respose is tolled, as the plaintiffs argue, by the continuing course of conduct doctrine or by fraudulent concealment, this action is barred.
B. Continuous Course of Conduct
The plaintiffs contend that the limitations of § 52-584 have been tolled by the application of the doctrine of continuing course of conduct. Our Supreme Court has held that "in the proper circumstances, [the statute of limitations] may be tolled under the continuous treatment or the continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date." Blanchette v.Barrett, supra, 229 Conn. 265. In order to toll the statute of limitations, the court must find that either the continuous treatment doctrine or the continuing course of conduct doctrine applies to a certain given circumstance. The continuing course of conduct doctrine applies where a duty that remained in existence, after commission of the original wrong related thereto, has been breached. The physician's or the hospital's duty to the patient must not have ended before the beginning of the time period for bringing a cause of action for the original wrong. A physician's or hospital's duty continues after the wrongful act or omission if there is either a special relationship between the parties or the physician or hospital commits a subsequent wrongful act or omission that relates to the original wrongful act or omission. CT Page 7152Blanchette v. Barrett, supra, 229 Conn. 275.
The plaintiffs argue that the continuing course of conduct doctrine applies to their causes of action because Stamford Hospital had a special relationship with Christopher Neuhaus and wrongfully omitted telling Andrea and David Neuhaus the extent of Christopher Neuhaus' injuries. Stamford Hospital argues, however, that the continuing course of conduct doctrine does not apply because it had no continuing duty to the plaintiffs and the plaintiffs have failed to show that Stamford Hospital's alleged negligence related to the original wrongful act.
In order for the court to find that the continuing course of conduct doctrine might toll the statute of limitations, the plaintiffs must present evidence to satisfy a three-pronged test. In a summary judgment context the court "must determine if there is a genuine issue of material fact with respect to whether [Stamford Hospital]; (1) committed an initial wrong upon the [plaintiffs]; (2) owed a continuing duty to the [plaintiffs] that was related to the alleged original wrong; and (3) continually breached that duty." Witt v. St. Vincent's Medical Center,252 Conn. 363, 370 (2000).
1) Initial Wrong
The plaintiffs contended at oral argument of this motion that the critical initial wrong of Stamford Hospital with respect to the continuing course of conduct issue consisted of allegedly not advising Christopher's parents of the nature of the extensive medical care given the infant after birth and that Christopher was at risk for permanent injuries. This argument was pursued in the plaintiffs' subsequently filed memoranda. The short answer to this contention is, as pointed out by Stamford Hospital, that the plaintiffs did not plead any facts in support of this argument in their third amended complaint. The allegations of negligence pleaded by the plaintiffs consist solely of acts or omissions occurring before or at birth. No allegations of negligence by the Hospital after the time of birth are made. See Third Amended Complaint, Count Seven, ¶ 5.
However, if the court accepts the contention that the initial wrong of the Hospital included its failure to advise the plaintiffs that Christopher was at risk for permanent injury (this allegation is
contained in the proposed, but not operative, amended complaint) then there clearly is one or more unresolved issues of material fact and the plaintiffs have met the first prong of the test set forth in Witt.
2) Continuing Duty
CT Page 7153
The court now turns to the second prong of the test for the continuing course of conduct doctrine: whether Stamford Hospital owed a continuing duty to the plaintiffs related to the alleged initial wrong, i.e. was there a continuing duty on the part of the hospital, after Christopher had left the hospital, to warn his parents about risk of permanent injury. The Witt court pointed out that a continuing duty had been found to exist when there was some second instance of wrongful conduct occurring after the initial wrong or there was some "special relationship" between the parties. Witt v. St. Vincent's Medical Center, supra 370 quoting Sherwood v. Danbury Hospital, 252 Conn. 193, 203
(2000).
It is undisputed that the Hospital performed no treatment or care of Christopher after he was discharged in October 1990 and there is no allegation or evidence of any subsequent wrong. The plaintiffs argue that there was a special relationship between Stamford Hospital and Christopher because, in general, a hospital owes a fiduciary duty to its new born patient. No specific facts or allegations are presented by the plaintiffs to support the existence of a special relationship, and the issue presented is a legal one, i.e. whether a special relationship of the nature required by the continuing course of conduct doctrine exists. The court holds that there is no logical or policy basis to conclude that a special relationship existed giving rise to a continuing duty owed by Stamford Hospital to Christopher. Plaintiffs' contention would, in effect, impose a special relationship with, and therefore a continuing duty toward, every child born in every hospital. Such an expansion of the continuing course of conduct doctrine is unwise and not in the least supported by appellate court decisions in this state.
3) Breach of Duty
Finally, in this analysis, the plaintiffs must show a genuine issue of material fact as to whether Stamford Hospital breached a duty owed to Christopher. The plaintiffs argue, through the affidavit of Dr. Marcus Hermansen, that the standard of care in 1990 required Stamford Hospital to advise Christopher's parents of the course of his treatment at the hospital and his prognosis; that Christopher's prognosis included risk of "permanent sequelae" from his lungs' immaturity and that the parents should have been advised of the risk. Hermansen Affidavit, ¶ 10-12. Plaintiffs contend that this duty to advise was a continuing one. As noted above, the court has concluded otherwise. Nevertheless, it turns to consider whether the duty was breached.
In two recent cases the Appellate Court has held in similar circumstances that in order to prove a breach of duty occurred, there must be evidence that the defendant actually knew of the risk it is CT Page 7154 charged with failing to warn about
 Speculative evidence about whether a defendant [medical services provider] was aware of a specific medical risk cannot serve as a basis for opposition to a motion for summary judgment
Hernandez v. Cirmo, 67 Conn. App. 565, 575 cert. denied 259 Conn. 931
(2002). In Nieves v. Cirmo, 67 Conn. App. 576 cert. denied 259 Conn. 931
(2002) the plaintiff's expert opined that the defendant owed a duty to inform the plaintiff of an increased risk. Id. 580. Even with that evidence, however, the Appellate Court upheld summary judgment against the plaintiff because it was not enough that the defendant should have known of the increased risk. Rather, it was incumbent for the plaintiff to produce evidence that the defendant was aware of the risk. Id. 583, 584. In this case, Hermansen's affidavit states no more than the Hospital should have known of the risk of "permanent sequelae." Thus, the court concluded there is no evidence to put into issue the assertion of the Hospital, through Dr. Rakos, that it was not aware of that risk. Rakos Affidavit, ¶ 7.
In summary, even if it accepts that the initial wrong was not advising the plaintiffs of possible future risk, the court finds that the plaintiffs have not met two of the three elements necessary for tolling the three year repose period of § 52-584 based on the continuing course of conduct theory.
C. Fraudulent Concealment
Stamford Hospital next argues that the plaintiffs have failed to show that there is a genuine issue of material fact as to their fraudulent concealment claim. Specifically, Stamford Hospital argues that there is no evidence that it concealed information on lung maturity from the plaintiffs or that it had the intent to conceal any cause of action from the plaintiffs. As such, it argues that the plaintiffs' cause of action under § 52-584 is not tolled, rather the plaintiffs are barred from bringing any cause of action against Stamford Hospital because the statute of limitations period has expired.
General Statutes § 52-595 states that "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." "[T]o prove fraudulent concealment, the plaintiffs [are] required to show by clear and convincing evidence: (1) a defendant's actual awareness, rather than CT Page 7155 imputed knowledge, of the facts necessary to establish the plaintiffs' cause of action; (2) [the] defendant's intentional concealment of these facts from the plaintiffs; and (3) [the] defendant's concealment of the facts [was] for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause of action." Bartone v. Robert L. DayCo., 232 Conn. 527, 533 (1995). In making a claim for fraudulent concealment, the plaintiff bears the burden of showing that "the hospital was aware of the facts necessary to establish that cause of action and that it had intentionally concealed those facts from the plaintiff." (Emphasis in original.) Golden v. Johnson Memorial Hospital, Inc.,66 Conn. App. 518, 532 cert. denied 259 Conn. 902 (2001). Although summary judgment is "particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions . . . it remains, nevertheless, incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Citations omitted; internal quotations marks omitted.) Connell v. Colwell, 214 Conn. 242, 251,571 A.2d 116 (1990)..
The plaintiffs fail to make a showing that § 52-584 is tolled because of Stamford Hospital's fraudulent concealment. The plaintiffs submit evidence that demonstrates that Andrea Neuhaus was not told by Stamford Hospital of the extent of Christopher Neuhaus' injuries or the possibility that he may suffer permanent injuries arising from his lung's immaturity. (A. Neuhaus Affidavit, ¶¶ 3-19.) She avers that she did not become aware of Christopher Neuhaus' injuries stemming from his premature birth until 1995. (A. Neuhaus Affidavit, ¶ 19.) This evidence, however, does not demonstrate that Stamford Hospital actually knew, during the time Christopher Neuhaus was a patient at the hospital, that Christopher Neuhaus suffered or would suffer permanent injuries from RDS and his lung's immaturity, or that Stamford Hospital intentionally concealed this information from the plaintiffs so that they would ultimately be precluded from bringing a cause of action against Stamford Hospital. The plaintiffs offer no evidence to establish a factual predicate for their claim of fraudulent concealment, and therefore, have failed to show that a genuine issue of material fact exists regarding the tolling of the statute of limitations based on this theory.
D. Challenge to the Constitutionality of Section 52-584
The plaintiffs also challenge, on two separate grounds, the constitutionality of Section 52-584, as it applies to them. First, they contend that the three year repose provision completely bars Christopher's claims from court in violation of the guarantee of open courts found in the Connecticut Constitution at Article First, § 10. CT Page 7156 Second, they argue that the repose period is a violation of their rights to equal protection under the law protected by both the Connecticut and federal constitutions.
The Connecticut Supreme Court has not addressed the constitutionality of General Statutes § 52-584. However, the Appellate Court considered the issue recently in Golden v. Johnson Memorial Hospital, supra. That case dealt with the same constitutional arguments presented by the plaintiffs in this case. The Golden decision held that the three year repose provision did not violate Article First, § 10 of the Connecticut Constitution even though the three years might expire before the plaintiff knew he had any injury. The court also held that the statute did not violate equal protection rights. The rejection of those arguments by the Golden court compels this court to reject them also.
 III — CONCLUSION
Summary judgment in favor of the Stamford Hospital is granted. The court finds that there are no material facts at issue; that General Statutes § 52-584 is constitutional and bars the plaintiff's claims, and that plaintiffs have failed to establish any basis for invocation of the fraudulent concealment statute.
Taggart D. Adams