CHRISTOPHER NEUHAUS ET AL. *v.* CORINNE DECHOLNOKY ET AL.
(AC 23317)
(AC 23946)

Lavery, C. J., and Foti, Schaller, Dranginis, Flynn, Bishop, West, DiPentima and Dupont, Js.

---

Argued March 31—officially released June 29, 2004

*Carey B. Reilly*, with whom, on the brief, was *Ruth Weissman*, legal intern, for the appellants (plaintiffs).

*David J. Robertson*, with whom were *Gaileen A. Kaufman* and *Bradley M. Smolkin*, for the appellee (named defendant).

*Charles D. Ray*, with whom were *Salvatore N. Fornaciari* and, on the brief, *David A. Reif* and *Ingrid L. Moll*, for the appellee (defendant Stamford Hospital).

*Opinion*

BISHOP, J. This appeal requires us to consider the application of the repose section of the statute of limitations, General Statutes § 52-584, to a medical malpractice action brought on behalf of a disabled minor child by his parents. The plaintiffs, Christopher Neuhaus and his parents, David Neuhaus and Andrea Neuhaus, individually and on behalf of Christopher, appeal from the summary judgment rendered by the trial court in favor of the defendants, Corinne DeCholnoky, an obstetrician and gynecologist, and Stamford Hospital (hospital), on their defense that the plaintiffs' action is time barred pursuant to § 52-584. The plaintiffs claim that summary judgment was improper because the repose section of § 52-584 (1) was tolled by the continuing course of conduct doctrine (2) was tolled by the defendants' fraudulent concealment of their claims and (3) is unconstitutional as applied to the disabled minor child.[1]

---

[1] In view of our disposition of the plaintiffs' first claim against the hospital, we do not address their second and third claims as to the hospital.

We affirm the judgment of the trial court as to DeCholnoky and reverse it as to the hospital.

The following facts and procedural history are relevant to our discussion of the issues on appeal. The plaintiff parents instituted this action on July 25, 1996, individually and on behalf of their son, Christopher, who was delivered prematurely at the hospital on September 17, 1990, with premature lungs and thereafter developed a condition known as respiratory distress syndrome. The plaintiffs alleged that both DeCholnoky, who delivered the child, and the neonatologist, Gerald B. Rakos, an employee of the hospital, were negligent in several ways and that as a consequence, Christopher suffers from serious infirmities, including brain damage and cerebral palsy. Principally, they alleged that DeCholnoky failed to conduct adequate tests to determine the developmental readiness of the child's lungs for birth before inducing labor at thirty-seven weeks of gestation. As a result, they alleged, Christopher was delivered before his lungs had developed adequately. The plaintiffs claim that Rakos failed to inform the plaintiff parents of the course of their child's treatment in the hospital and failed to warn them of the known risk of future developmental motor and mental health defects stemming from respiratory distress syndrome and, as a consequence, Christopher is now afflicted with multiple, severe infirmities, including permanent brain damage.

The plaintiffs alleged that when Christopher was discharged from the hospital on October 3, 1990, he was given a clean bill of health by Rakos and that neither DeCholnoky nor Rakos told the parents that Christopher was at risk for subsequent infirmities due to respiratory distress syndrome. The plaintiffs claimed that it was only after the parents had switched pediatricians and requested Christopher's medical charts from the hospital that they then discovered that Christopher had

received numerous blood transfusions and a spinal tap while in the care of the hospital. Most notably, the plaintiffs claim that it was only on review of Christopher's hospital records by their new pediatrician that the parents learned that brain damage is a known risk of respiratory distress syndrome.

Separately, both defendants filed motions for summary judgment, asserting that the plaintiffs' action was barred by § 52-584,[2] the applicable statute of limitations for medical malpractice actions, which requires that such a claim must be brought within two years of discovery of the injury, but in no event any later than three years from the act or omission. In response, the plaintiffs acknowledged that they did not bring the action within three years, but claimed that the second part of the statute, the three year repose provision, was tolled by the continuing course of conduct doctrine. In essence, they claimed that the defendants were under a continuing duty to inform the plaintiffs that Christopher was at risk for permanent medical damage resulting from respiratory distress syndrome. In the alternative, they alleged that the three year limitation of § 52-584 is unconstitutional as applied to their disabled minor child. The court rejected the plaintiffs' claims and rendered summary judgment in favor of the defendants. This appeal followed.

I

The plaintiffs first claim that the court improperly concluded that the statute of limitations in § 52-584 was not tolled by the continuing course of conduct doctrine. Specifically, they argue that there were genuine issues

___

[2] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury . . . by malpractice of a physician . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

of material fact as to whether Rakos and DeCholnoky had an awareness of Christopher's risk for permanent medical damage and a continuing duty to warn them of the risks of respiratory distress syndrome after Christopher had been discharged from the hospital.

As a preliminary matter, we set forth the legal principles that shape the parameters of our inquiry. "Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Such questions of law are subject to plenary appellate review. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, 77 Conn. App. 846, 848, 825 A.2d 827, cert. denied, 267 Conn. 901, 838 A.2d 210 (2003).

Under appropriate circumstances, § 52-584 may be tolled under the continuing course of conduct doctrine. *Blanchette* v. *Barrett*, 229 Conn. 256, 265, 640 A.2d 74 (1994). Our Supreme Court has established a three part test for determining whether the statute of limitations has been tolled. The test requires the plaintiffs to prove that the defendants "(1) committed an initial wrong upon the plaintiff[s]; (2) owed a continuing duty to the plaintiff[s] that was related to the alleged original wrong; and (3) continually breached that duty." *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 370, 746 A.2d 753 (2000).

"[I]n the medical treatment context . . . continuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct . . . ." (Internal quo-

tation marks omitted.) Id., 371. In *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 206, 746 A.2d 730 (2000), a genuine issue of material fact existed as to whether the defendant hospital knew before discharging the plaintiff patient that she had received untested blood that could have contained the human immunodeficiency virus. In *Witt*, the physician did not inform the patient that the physician was concerned that the lump in the patient's neck could become cancerous. *Witt* v. *St. Vincent's Medical Center*, supra, 252 Conn. 372–73. As the defendants in both cases were aware of the risks at the time that the plaintiffs were discharged, our Supreme Court held that the three year statute of repose was tolled until the defendants informed the plaintiffs of such risks. *Witt* v. *St. Vincent's Medical Center*, supra, 376; *Sherwood* v. *Danbury Hospital*, supra, 209. We have held, however, that for a duty to warn to continue beyond the limitation period imposed by § 52-584, there must be probative evidence that the medical care provider actually knew of the risk before discharge. See *Hernandez* v. *Cirmo*, 67 Conn. App. 565, 572, 787 A.2d 657, cert. denied, 259 Conn. 931, 793 A.2d 1084 (2002); *Nieves* v. *Cirmo*, 67 Conn. App. 576, 587, 787 A.2d 650, cert. denied, 259 Conn. 931, 793 A.2d 1085 (2002). As the underlying facts as to each defendant are unique, we address each defendant in turn.

A

Stamford Hospital

For purposes of applying the test for the imposition of a continuing duty, the court concluded that the plaintiffs had met the first requirement of demonstrating that the hospital had committed an initial wrong in failing to inform them that the diagnosis of respiratory distress syndrome carries with it the risks of serious medical repercussions, including brain injury and cerebral

palsy.[3] Because this action was filed well after the expiration of the three year statute of limitations, it could survive the hospital's motion for summary judgment only if the plaintiffs could show that after Christopher's discharge, and notwithstanding the hospital's initial failure to warn, the hospital had a continuing duty to warn them of the future risks associated with respiratory distress syndrome. As stated previously, the imposition of a continuing duty to warn the plaintiffs of the risks of respiratory distress syndrome presupposes, in turn, that the hospital had actual knowledge of the risks. See, e.g., *Hernandez* v. *Cirmo*, supra, 67 Conn. App. 572. Thus, although a continuing duty may be imposed as a matter of law beyond the time periods set for filing a claim pursuant to § 52-584, a continuing duty must rest on the factual bedrock of actual knowledge.

The core issue in assessing the court's ruling on the motion for summary judgment is whether the plaintiffs presented adequate evidence to raise a genuine issue of material fact that the hospital actually knew at the time of discharge the risks of respiratory distress syndrome. If it can be shown that the hospital was aware of the risks at the time of treatment, then the law, as we have been instructed by *Witt*, will impose a continuing duty on the hospital beyond the statutory period of

---

[3] The court and both parties agree that the plaintiffs have met their burden of proving an initial wrong. Although the third amended complaint did not contain an allegation that the hospital failed to advise the plaintiffs that Christopher was at risk for permanent injuries, a fair reading of the court's memorandum of decision indicates that the court, when analyzing the first prong of the test in *Witt*, considered the proposed amended complaint as the operative complaint. The court stated in relevant part: "However, if the court accepts the contention that the initial wrong of the hospital included its failure to advise the plaintiffs that Christopher was at risk for permanent injury (this allegation *is* contained in the proposed, but not operative, amended complaint), then there clearly are one or more unresolved issues of material fact, and the plaintiffs have met the first prong of the test set forth in *Witt*." (Emphasis in original.)

limitation to warn the plaintiffs of such risks even after the child left the hospital's care.

In the present case, the plaintiffs contend that they have presented a genuine issue of material fact as to whether Rakos and, thus, the hospital[4] knew at the time of discharge that Christopher was at risk for subsequent injuries related to the initial diagnosis of respiratory distress syndrome. In opposition to the hospital's motion for summary judgment, the plaintiffs submitted the affidavit of Marcus Hermansen, a board certified pediatrician, and the deposition of Rakos. Hermansen's affidavit stated that the standard medical practice at the time of Christopher's birth required that the hospital and Rakos inform the parents of the child's course of treatment and his prognosis on discharge from the hospital. A fair reading of Rakos' deposition testimony indicates that he was aware that Christopher had respiratory distress syndrome and that there was a slight risk that Christopher could develop subsequent injuries. Rakos claimed, however, that the normal conversation with a parent of a child at low risk for future complications would not include a discussion of the child's future neurological prognosis.[5] The hospital contends, on the

---

[4] The plaintiffs sought recovery against the hospital through a theory of vicarious liability.

[5] The following is the relevant examination from Rakos' deposition:

"[The Plaintiffs' Counsel]: And in terms of long-term prognosis, usual conversation that you have, do you indicate that some children who have respiratory distress problems sometimes do not have normal brain outcomes . . . or something along those lines?

"[The Witness]: The nature of the conversation we have when, so the dust is settled and the babies are going home, has more to do with their gestational age and neurological complications that they had during the hospitalization.

"[The Plaintiffs' Counsel]: And I take it from that that you don't address what the future neurologic course might include?

"[The Witness]: That's a question that every patient asks us, and our answers are fairly standard in the context of the clinical situation, which is very variable. So, you can have a very premature baby who had intraventricular hemorrhage and had a seizure and had a conversation that says not all of these babies have neurological problems, but clearly these are bad risk factors, and we need to be careful about follow-up.

other hand, that the affidavit submitted by Rakos demonstrates that he was not aware that Christopher would develop subsequent injuries and that he had no expectation that Christopher would suffer a permanent injury. In balance and taking the facts in the light most favorable to the plaintiffs, we conclude that there is a genuine issue of material fact as to whether, at the time of the Christopher's discharge from the hospital, Rakos knew that Christopher was at risk for subsequent injuries resulting from respiratory distress syndrome and that Rakos chose not to discuss those risks with the adult plaintiffs. See footnote 5. Accordingly, there was a genuine issue of material fact as to the whether Rakos was aware of the possibility of a future risk of brain damage. If there was such awareness, the hospital had a continuing duty to warn the plaintiffs after Christopher's discharge from the hospital that he was at risk for developing medical infirmities.

Having determined that there was a genuine issue of material fact regarding the hospital's continuing duty to warn of the risks associated with the child's diagnosis, we next turn to the question of whether there was a genuine issue of material fact with regard to whether there was a continuing breach of that duty by the hospital. The plaintiffs alleged that neither Rakos nor any employee of the hospital informed them that Christopher was at risk for subsequent injuries. As noted, Rakos acknowledged in his deposition that under the facts of this case, he generally would not have discussed Christopher's future neurological prognosis with the parents while Christopher was in his care or upon discharge from his care. From that testimony, a jury rea-

---

"And the other side is of more mature babies who had respiratory problems and otherwise was totally fine, we would have a very different kind of conversation that didn't focus much on neurologic because those risks are very low."

sonably could conclude that the plaintiffs were not informed at the time of Christopher's discharge, by the hospital, of the health risks presented to Christopher by respiratory distress syndrome, although Rakos was aware of their possible severity. If a jury did so conclude, the hospital would have a continuing duty to warn pursuant to the continuing course of conduct doctrine, which would constitute a continuing breach. See, e.g., *Sherwood* v. *Danbury Hospital*, supra, 252 Conn. 208–209; *Blanchette* v. *Barrett*, supra, 229 Conn. 279–80.

Because the plaintiffs have presented some evidence from which a jury could conclude that Rakos was aware that Christopher was at risk for subsequent brain injuries and failed initially and subsequently to warn the plaintiffs of that risk, there were genuine issues of material fact as to whether the repose section of § 52-584 was tolled by Rakos' actions. Consequently, the rendering of summary judgment in favor of the hospital was improper.[6]

B

DeCholnoky

The plaintiffs claim that the court improperly concluded that the cause of action against DeCholnoky was barred by the statute of limitations. They argue that DeCholnoky was under a continuing duty to warn them of the risks associated with respiratory distress syndrome. We disagree.

We first turn to the question of whether the plaintiffs have presented a genuine issue of material fact concerning a duty on DeCholnoky's part to warn them of the known risks of respiratory distress syndrome. In

[6] Our conclusion in this case is limited to whether summary judgment should have been rendered and not, as the hospital has pointed out, whether there was a causal link between Christopher's injuries and any failure of the hospital to warn of the risks of respiratory distress syndrome.

addressing that question, we are guided by well settled principles of law. "We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Internal quotation marks omitted.) *Golden* v. *Johnson Memorial Hospital, Inc.,* 66 Conn. App. 518, 526–27, 785 A.2d 234, cert. denied, 259 Conn. 902, 789 A.2d 990 (2001).

Setting aside the issue of foreseeability, we conclude that as a matter of public policy, DeCholnoky did not have a duty to warn the plaintiffs of the known health risks flowing from a diagnosis of respiratory distress syndrome.[7] The facts underlying the plaintiffs' claim are undisputed. DeCholnoky cared for Andrea Neuhaus during the prenatal period and delivered Christopher at the hospital on September 17, 1990. On delivery, Christopher's care was entrusted to the hospital and Rakos. After delivery, DeCholonky did not treat Christopher, nor did she diagnose Christopher as having respiratory distress syndrome. Rather, Christopher was diagnosed with respiratory distress syndrome three days after delivery. Finally, the plaintiffs have presented no evidence that Christopher had detectable respiratory distress syndrome in utero. The plaintiffs claim, nevertheless, that after Christopher's birth, DeCholnoky was

---

[7] We are not required to address foreseeability if we conclude as a matter of policy that no duty of care existed. See *Gomes* v. *Commercial Union Ins. Co.,* 258 Conn. 603, 618 n.11, 783 A.2d 462 (2001).

in constant contact with Rakos and that she was, in fact, aware of the diagnosis. On that basis, the plaintiffs assert, DeCholonky had an initial duty to inform the parents of the health hazards associated with respiratory distress syndrome. Under circumstances in which DeCholnoky neither treated Christopher after delivery nor made the diagnosis of respiratory distress syndrome, we are unwilling to impose on her a duty to warn the parents of the risks associated with that condition simply because she was, in fact, aware of the diagnosis and had remained in contact with Christopher's physicians during his postdelivery stay in the hospital. In the absence of such a duty, the plaintiffs have failed to satisfy the first prong under *Witt* without which there cannot, as a matter of law, be any continuing duty. Consequently, the plaintiffs' claim against DeCholnoky is time barred by the application of § 52-584.

The plaintiffs claim, alternatively, that the three year statute of repose was tolled by General Statutes § 52-595, which concerns the fraudulent concealment of a claim.[8] Specifically, they argue that there were genuine issues of material fact as to whether DeCholnoky fraudulently concealed the existence of the plaintiffs' cause of action from them. We are not persuaded.

"To establish that the [defendant] had fraudulently concealed the existence of their cause of action and so had tolled the statute of limitations, the plaintiffs had the burden of proving that the [defendant was] aware of the facts necessary to establish this cause of action . . . and that [she] had intentionally concealed those facts from the plaintiffs. . . . To meet this burden, it was not sufficient for the plaintiffs to prove merely that

[8] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

it was more likely than not that the [defendant] had concealed the cause of action. Instead, the plaintiffs had to prove fraudulent concealment by the more exacting standard of clear, precise, and unequivocal evidence . . . ." (Citations omitted; internal quotation marks omitted.) *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 665–66, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986).

Our careful review of the record leads us to conclude that the plaintiffs have failed to demonstrate that DeCholnoky fraudulently concealed the cause of action from them. Mere allegations of fraud in a complaint without some factual underlayment when opposing a motion for summary judgment will not suffice to toll the statute of limitations. Here, in opposing the motion for summary judgment, the plaintiffs have offered no factual support for their claim. Accordingly, we conclude that the rendering of summary judgment relative to the claim of fraudulent concealment was proper.

II

Having concluded that the rendering of summary judgment as to DeCholnoky was in accord with our decisional law regarding the application of the statute of limitations set forth in § 52-584, we now turn to the plaintiffs' claim that the repose section of § 52-584 is unconstitutional as applied to Christopher's claim. Specifically the plaintiffs claim that the repose section of § 52-584 violates (1) the open courts provision of article first, § 10, of the constitution of Connecticut[9] and (2) Christopher's right to the equal protection of the law as contained in article first, § 1, and article first, § 20, of the constitution of Connecticut, as amended by article

[9] Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

twenty-one of the amendments.[10] In assessing the constitutionality of the repose section of § 52-584, we are instructed by the well established precept that "[t]he party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality." (Internal quotation marks omitted.) *State* v. *Higgins*, 265 Conn. 35, 62, 826 A.2d 1126 (2003). Additionally, we note that, "Connecticut courts have held, in accordance with the federal frame of analysis, that state action concerning social and economic regulation, with some exceptions, will survive an equal protection challenge if it satisfies a rational basis test. . . . The exceptions relate to state action that invidiously discriminates against a suspect class, such as the physically or mentally disabled, members of a race or gender, or state action that affects a fundamental right. When that occurs, the action passes constitutional muster only if it survives strict scrutiny. . . . If the statute does not involve fundamental rights or suspect classifications, the legislation is constitutional if any difference in treatment is rationally related to a legitimate government interest." (Citations omitted.) *Giordano* v. *Giordano*, 39 Conn. App. 183, 189, 664 A.2d 1136 (1995).

## A

### The Open Courts Doctrine

The plaintiffs first claim that the repose section of § 52-584 violates the open courts provision of article first, § 10, of the constitution of Connecticut by denying

---

[10] Article first, § 20, of the constitution of Connecticut as amended by article twenty-one of the amendments provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

them a right to bring a claim without providing a reasonable alternative. We disagree.

In *Golden* v. *Johnson Memorial Hospital, Inc.*, supra, 66 Conn. App. 538, we addressed and answered that question in the negative. Contrary to the plaintiffs' claim, we believe that the present facts and those found in *Golden* are adequately similar for the holding of *Golden* to be applicable. In both cases, the plaintiffs claimed that they could not have discovered their causes of action within the three year statute of repose time period and that they were therefore prohibited by the imposition of the statutory time limit from exercising a common-law right that predated the adoption of the state constitution in 1818. Because we previously have concluded that the statute does not violate the open courts doctrine, the plaintiffs' claim in that regard is unavailing.[11]

## B

## The Equal Protection Claim

The plaintiffs next claim that the repose section of the statute of limitations violates Christopher's equal protection rights as contained in article first, § 1, and article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments. They argue that the repose section of § 52-584 treats similarly situated victims of medical malpractice in a disparate fashion. Specifically, they argue that victims with disabilities that are not diagnosable within three years of birth are treated differently from tort victims whose injuries are quickly ascertainable. We are not persuaded.[12]

---

[11] In reaching that determination, we expressly decline the plaintiffs' invitation to overturn our holding in *Golden* v. *Johnson Memorial Hospital, Inc.*, supra, 66 Conn. App. 518.

[12] DeCholnoky argues that this issue also is foreclosed by our holding in *Golden*, in which we concluded that § 52-584 did not violate the plaintiff's equal protection rights. Christopher's status as a disabled minor, however, warrants an independent review.

To assess that claim, we must first determine the level of scrutiny we should apply in reviewing the constitutionality of the statute. The plaintiffs argue that we should apply strict scrutiny because Christopher is a member of a suspect class due to his disability. We believe, however, that the presence of disability alone, without a showing that the statute discriminates on the basis of the disability, provides an insufficient basis to warrant strict scrutiny. As previously stated, strict scrutiny is required only when a state action *invidiously* discriminates *against* a suspect class or affects a fundamental right. See *Foti* v. *Richardson*, 30 Conn. App. 463, 469, 620 A.2d 840 (1993). While we agree that under article first, § 20, as amended by article twenty-one of the amendments to the Connecticut constitution, strict scrutiny is applied to a claim that a statute invidiously discriminates against a disabled individual, under the facts of this case, Christopher's status as a disabled individual did not affect the application of the repose section of § 52-584. The factual contrast in our Supreme Court's decision in *Daly* v. *DelPonte*, 225 Conn. 499, 515, 624 A.2d 876 (1993), illuminates that point. In *Daly*, our Supreme Court established the requirement of strict scrutiny review for an equal protection claim that is based on disability. Id., 513–14. In *Daly*, however, it was undisputed that the state action to which the plaintiff objected was based on the plaintiff's disability. Id., 512. In contrast, in the present case, it was Christopher's claimed inability to discover his injury within the three year statute of repose that barred the plaintiffs' cause of action. The plaintiffs have made no showing that Christopher's disability, rather than his age,[13] was a distinct factor in preventing their awareness of his harm. In sum, the plaintiffs' claims in this instance would have been time barred regardless of Christo-

---

[13] Age is not a suspect class under our state constitution or the federal constitution. *Rayhall* v. *Akim Co.*, 263 Conn. 328, 343, 819 A.2d 803 (2003).

pher's disability. Consequently, the state did not invidiously discriminate against the plaintiffs on the basis of Christopher's disability. Cf. *Foti* v. *Richardson*, supra, 469. In the absence of such a finding of invidious discrimination, we review § 52-584 to determine whether there is a rational basis for its application to the facts and parties at hand.

"In order for a statute to withstand rational basis review, we consider whether the classification and disparate treatment inherent in a statute bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal. . . . [U]nder this analysis, the legislature is not required to articulate the purpose or rationale for its classification. The test . . . is whether this court can *conceive* of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 346, 819 A.2d 803 (2003).

We begin by addressing the policy implicit in our statute of limitations. "There are two principal reasons generally given for the enactment of a statute of repose: (1) it reflects a policy of law, as declared by the legislature, that after a given length of time a [defendant] should be sheltered from liability and furthers the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . and (2) to avoid the difficulty in proof and record keeping which suits involving older [claims] impose." (Internal quotation marks omitted.) *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 305, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995). We note as well that our statute of limitations regarding negligence actions applies equally to minors as well as to those who have reached their majority. See *Lametta*

v. *Connecticut Light & Power Co.*, 139 Conn. 218, 221, 92 A.2d 731 (1952).

Notwithstanding these policy reasons, the plaintiffs argue that there exists no rational basis for barring their cause of action before they were aware that they had one, and that the imposition of a time bar causes them undue hardship and an injustice. In an analogous circumstance, our Supreme Court has held that the imposition of a statute of limitation to bar a cause of action will not be found to be unconstitutional because it may be unfair. In *Ecker* v. *West Hartford*, 205 Conn. 219, 240–41, 530 A.2d 1056 (1987), our Supreme Court opined: "We cannot conclude that [General Statutes] § 52-555 is unconstitutional under article first, § 20, merely because the three year period it contains is unfair at times. Statutes of limitation find their justification in necessity and convenience rather than logic. . . . There is no reason, constitutional or otherwise, which prevents the legislature from establishing a three year time period that runs from the date of the act or omission complained of, as was done here, even though at that date no person had sustained damage and therefore no cause of action had come into existence. . . . It is not the function of the court to alter a legislative policy merely because it produces unfair results. . . . Individual rights and remedies must at times and of necessity give way to the interests and needs of society." (Citations omitted.) Id.

The plaintiffs claim that nearly all jurisdictions except Connecticut provide some statutory relief from the application of the statute of limitations to claims involving minor plaintiffs. For the reasons expressed in *Ecker*, concerning the prerogative of legislative bodies to enact legislation to achieve reasonable social goals, we are not persuaded by that argument. The fact that several other states' legislative bodies have carved various exceptions to their respective statutes of limitations for

civil claims brought by or on behalf of minors reveals only the disparate legislative views of the social utility and desired extent of such exceptions and not that the absence of such an exception in Connecticut is unconstitutional. We conclude that there exists a rational basis for Connecticut's three year statute of repose embodied in § 52-584. Accordingly, the plaintiffs' claim must fail.

The judgment is reversed as to the defendant Stamford Hospital and the case is remanded for further proceedings in accordance with law as to that defendant. The judgment is affirmed as to the defendant Corinne DeCholnoky.

In this opinion the other judges concurred.